## MASON PRODUCE COMPANY *v.* HARRY C. GILBERT COMPANY.

[No. 24,508. Filed December 6, 1923. Rehearing denied April 8, 1924.]

1. SALES. — *Contract.* — *Sufficiency.* — Telegrams between the buyer of merchandise and a merchandise broker, describing the article sold as a carload of beans, stating the price per pound, but not the number of pounds, the place and date of shipment and the name of the purchaser, but not the name of the seller, do not constitute a binding contract of sale. p. 466.

2. BROKERS.—*Duties to Principal.*—*Disclose Information that Might Influence Him.*—A broker owes to his principal the duty to act with the utmost good faith in all their dealings with each other and to disclose to his principal all facts within his knowledge, or which he may learn in the course of a transaction in his principal's behalf, that are or may be material to the matter in which he is employed, or which might influence the action of his principal in relation thereto. p. 468.

3. BROKERS.—*Liability to Principal.*—*Failure to Give Notice of Cancellation of Order.*—Where a broker, at a time when his principal's property was still in his warehouse, where it was of the full market value for which a sale had been negotiated, received notice from the purchaser that he had canceled his order and bought elsewhere, and denied liability on the order given to such broker, failed to notify his principal, who pursuant to the order, shipped a carload of beans a thousand miles

to the customer, where they arrived more than three weeks later, at a time when there was little demand for them, he is liable for any resulting loss sustained by his employer.  p. 468.

4.  DAMAGES.—*Amount to be Determined from Inferences.— Question for Jury or Trial Court.*—Where the amount of loss that was the proximate result of defendant's negligence must be determined, in part, from inferences from the facts proved, the question is one for the jury or the trial court sitting as a jury.  p. 469.

From Marion Superior Court (A6,810) ; *Linn D. Hay,* Judge.

Action by the Mason Produce Company against the Harry C. Gilbert Company.  From a judgment for defendant, the plaintiff appealed to the Appellate Court. (Transferred from Appellate Court under §1394, subd. 2, Burns 1914.)  *Reversed.*

*Bingham & Bingham,* for appellant.
*Bachelder & Bachelder,* for appellee.

EWBANK, C. J.—Appellant sued for damages but recovered nothing.  The complaint counted upon alleged negligence of appellee, while acting as a merchandise broker, in failing to notify appellant that a party who had ordered a carload of beans by telegraph through appellee's agency had thereafter directed that the order be canceled, and had refused to sign a written contract of purchase.  The defendant answered by a denial. There was a general finding for the defendant and a judgment against the plaintiff for costs.  Overruling the motion for a new trial is assigned as error, under which appellant first insists that the finding is not sustained by sufficient evidence.  The evidence consisted wholly of a stipulation in writing setting out certain telegrams and correspondence, and two depositions, taken in Colorado and Kentucky, respectively, which also set out certain telegrams and correspondence. There is no conflict in any of this evidence.  A single

witness was produced and sworn in the court, but he testified only to his name, where he worked, and how long he had been employed there, an objection being sustained to all his other offered testimony.

Of the facts averred in the complaint, the evidence proved, without dispute, that plaintiff was a corporation, doing business in Colorado, engaged in selling food products at wholesale; that defendant was a corporation doing business at Indianapolis, Indiana, engaged in the business of selling such food products as a broker; that a company at Lexington, Kentucky, telegraphed to appellee at Indianapolis, an order for a "car recleaned Colorado Pinto beans this year's crop eight cents per pound F. O. B. Colorado * * *. for car rolling now en route." Appellee replied by telegraph with an offer of "Colorado Pintos seven seventyfive prompt shipment", and confirmed the offer by a letter which stated that "we did not offer any cars in transit." But on the forenoon of the day that the letter of confirmation was written, the company at Lexington replied to appellee's telegram by wiring the words: "Offer seven half car new Colorado Pinto shipment next week"; that this telegram was sent about noon on a Saturday; that because Saturday afternoon was a half holiday, it did not reach appellee until 5 p.m., and the next day (Sunday) appellee telegraphed appellant for authority to accept the offer; that about noon on the next day thereafter (Monday), appellee received from appellant by telegraph authority to do so, and then wired to the Lexington Company "Confirm car Colorado Pintos seven fifty per your wire Saturday", and the same day wrote and mailed to the Lexington company a letter which was received the day following, acknowledging receipt of the wire Saturday, stating that "We have confirmation this afternoon from the Mason Produce Co. on car as per sales ticket enclosed,

and have in turn wired you confirmation on this car. * * * Contract will be along in a few days which we will forward for your signature"; that after receiving the telegram last above mentioned (and before receiving the letter of confirmation, but whether before or after that letter was mailed does not appear), the Lexington company telegraphed to appellee to "cancel offer Colorado Pinto. Bought elsewhere. Delayed too long", which was received by appellee the same day (Monday). That evening, appellee sent the Lexington company a "night letter" telegram, saying it was too late to cancel, and the next day wrote a letter to the same effect, stating that appellee had wired confirmation of the order as soon as authority was received from the shippers in Colorado, and before the wire to cancel the order had been sent; that appellant forwarded to appellee a form of written contract of sale by appellant to said Lexington company of a car load of 60,000 pounds of Pinto beans at "7.50 per cwt. F. O. B. Greely, Colo.", on terms and conditions as therein stated, bearing the signature of appellant, and dated on Monday, the day the telegram of confirmation was sent, which appellee forwarded to the Lexington company for execution by it; but on the next Friday, that company returned the contract to appellee unsigned, with a letter stating that "you delayed too long in answering", and suggesting that if the car had been already started, it be diverted to some other point, as the company could not accept shipment; that appellee did not in any manner communicate to appellant the fact that the Lexington company had telegraphed to cancel the order and had refused to sign the written contract of purchase until more than three weeks after appellee received such telegram of attempted cancellation, being after the car load of beans had been loaded

and shipped, and had travelled to Lexington, and on the third day after it there had been rejected by the consignee; that the beans remained in appellant's warehouse until the Saturday after appellee had received the telegram refusing to take them and directing that the order be canceled when 60,000 pounds were loaded into a car and shipped, and during all of said time, including the time when they were so shipped, the beans were worth $7.50 per cwt. (being the full selling price) at the place of shipment; that, when they were shipped, a draft on the Lexington company for the price at $7.50 per cwt. with the bill of lading attached, was forwarded to a bank at Lexington, but the drawee refused to pay it; that the freight to Lexington, Kentucky was $581.91, and when the beans arrived there, they were rejected by the consignee, and appellant was compelled to pay such freight and to incur expense for demurrage, unloading, storage, insurance, and another broker's commission, and when they were sold on the market there, they brought only $7.37 per cwt. and the new purchaser did not pay the freight from Colorado; that after receiving telegrams and letters from the Lexington company directing that its order be canceled, refusing to sign the written contract of sale, and giving notice that the beans would not be received, if shipped, appellee wrote to said company telling it that the order could not be canceled, and that if it persisted in such refusal, the matter would be laid before the "Enforcement Division of the Food Administration", and that they would decide against said company; but that the "Food Administration", when its aid was afterward invoked, refused to interfere in the matter.

Counsel for appellee insist that this evidence proves the negotiation of a binding contract of sale between appellant and the Lexington company, and contend that when appellee had done this, its

1.

duties as a broker were ended, and that it therefore could not be guilty of negligence in failing to give appellant notice of facts afterward learned concerning the purchaser's attempted cancellation of the order, and declared purpose to refuse to accept and pay for the beans. But counsel are in error as to both propositions. The telegrams exchanged between appellee and the Lexington company before the latter gave notice that its order was canceled and that it would not accept and pay for the carload of beans, did not mention appellant's name, nor indicate in any way that the sale was being negotiated in its behalf, nor designate the quantity, except as "one car", though the contract afterward submitted for execution stated that a car should be "not less than 36,000 pounds" and that the quantity sold was 60,000 pounds, and the latter quantity was actually shipped. Certainly the name of the seller and the number of pounds sold were essential parts of a contract of sale, and telegrams which merely described the kind of article sold, the price per pound, the place and date of shipment, and the name of the purchaser, and referred to the quantity as a "car", were not sufficient to make a binding contract of sale. §7469 Burns 1914, §4910 R. S. 1881; *Lee* v. *Hills* (1879), 66 Ind. 474, 480; *Porter* v. *Patterson* (1908), 42 Ind. App. 404, 409, 85 N. E. 797. Appellee's own letters show that it so understood the telegrams. In its letter confirming the telegraphic acceptance of the Lexington company's offer, it said: "Contract will be along in a few days which we will forward for your signature", and it did forward a form of written contract, as stated above. The letter from appellee to appellant confirming the telegraphic order closed with a request to "send us a copy of your 1918 contract." And the duties which appellee had undertaken to perform as an agent and broker had not been fully performed when it received notice that the sup-

posed purchaser had repudiated its agreement, and had "bought elsewhere", and that if the beans were shipped to Lexington they would be rejected, as they afterward were.

But even if the telegrams had made a complete and binding contract, the evidence shows that appellee was remiss in the performance of its duty as a 2, 3. broker, and that much of the loss resulting from the refusal of the purchaser to perform such contract resulted from its failure to do what the law required of it. A broker owes to his principal the duty to act with the utmost good faith in all their dealings with each other, and is under the legal obligation to disclose to a person by whom he is employed as broker all facts within his knowledge or which he may learn in the course of a transaction in behalf of such person, that are or may be material to the matter in which he is employed, or which might influence the action of his principal in relation thereto. And where the broker, at a time when its employer's property was still in his warehouse in Colorado, where it was of the full market value for which a sale had been negotiated, learned that the purchaser to whom it was to be shipped had repudiated his order and bought elsewhere and denied liability on the order given to such broker, claiming that it was not accepted in time, and, without communicating those facts to the employer, permitted such employer, at an expense of more than $500, to ship a carload of beans 1,000 miles away to a customer in a small city who had fully supplied his needs by purchasing from others, where they arrived more than three weeks later, when there was little demand for them, is liable in damages for any resulting loss sustained by the employer. If the facts known to the broker had been communicated to the employer, he might have sold the beans to others at the place where they were, or diverted the car, while

in transit, to some other city where the demand for beans had not been met by purchases from others, or have kept the beans in the warehouse, and thus have minimized, if not wholly prevented, the alleged loss.

The amount of loss sustained by appellant of which appellee's negligence was the proximate cause was not agreed upon, but must depend, in part, upon inferences to be drawn from the facts proved.

Drawing such inferences is a function of the jury or of the trial judge sitting as a jury, and not of an appellate tribunal.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.