Robert Grant ESSEX and Helen Y. Essex, Appellants (Plaintiffs Below),

v.

Mary S. RYAN, Personal Representative of the Estate of John C. Ryan, Deceased, Appellee (Defendant Below).

No. 2–681A199.

Court of Appeals of Indiana, Second District.

March 21, 1983.

Kenneth C. Kern and Gregory A. Purvis, Kenneth C. Kern & Associates, Indianapolis, for appellants.

Theodore J. Nowacki, Daniel C. Emerson, Bose, McKinney & Evans, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiffs-appellants Robert Grant Essex and Helen Y. Essex (the Essexes) appeal from a summary judgment entered in favor of Mary S. Ryan (personal representative of the deceased John C. Ryan (Ryan)) in the Essexes' suit to recover damages arising from a survey which Ryan had negligently performed for their predecessor in title in 1955, the Essexes claiming damages they suffered were recoverable because of the deceased's professional incompetence and because they were assignees of their predecessors in interest.

We reverse.

## FACTS

Ryan was hired by Sylvester Davis to survey Davis's lot at 2911 West 62nd Street, Indianapolis. Davis wished to make an addition to the east side of his house and sought the survey to make sure that the house would not encroach upon the lot to the east. The 1955 survey showed that the Davis house was thirty-four feet away from the eastern boundary of the lot, and Ryan attached his certificate as a registered surveyor to this effect. In reliance upon this, Davis built a thirty-foot extension on the east side of his house, bringing the eastern end of the house to within four feet of the property line staked out by Ryan.

Ryan's survey was in error: The actual boundary line was twenty-five feet west of the boundary established by the 1955 survey. The addition made in reliance upon that survey caused Davis's house to encroach upon the adjoining lot by twenty-one feet.

In 1959, Davis sold the house to one Kennedy, who sold to the Essexes in 1962.

The owners of the adjoining lot to the east of the Davis/Essex lot filed their action to quiet title and for damages in trespass on March 5, 1976. The Essexes were bound by their conditional sales contract with their purchaser, Beatrice Smith, to defend title. That suit was settled; as a result, 21.1 feet of the twenty-five foot error remained with the Davis/Essex lot. The remaining 3.9 feet were ceded to the adjoining property owner. The Essexes released Beatrice Smith from the remaining $2,271.30 owing on the sales contract. Legal and surveying expenses in defending title for Smith cost them $7,869.20, making the Essexes' total claim of damage $10,140.50.

To recover these damages, the Essexes filed their suit against Ryan on August 21, 1978. That complaint was once dismissed and twice amended. Ryan, now deceased and appearing by his personal representative, Mary S. Ryan, filed a motion for summary judgment on October 14, 1980, which was granted December 31, 1980. From the denial of the motion to correct error on March 16, 1981, the Essexes now appeal.

On December 5, 1980, the Essexes obtained from Davis an assignment of "any and all rights, interests, property, claims, demands, cause of action, or chose in action . . . against or due from John C. Ryan . . . on account of" the 1955 survey. *Record* at 212. This assignment was presented to the trial court in the Essexes' response to Ryan's motion for summary judgment.

## ISSUES

The issues the Essexes present are best restated as follows:

Did the trial court err in deciding that the Essexes had no cause of action under a theory of a) fraud or negligent misrepresentation or b) breach of contract or breach of warranty?

## DECISION

PARTIES' CONTENTIONS—The Essexes cite the *Restatement (Second) of Torts,* § 552 (1977) for the proposition that if a professional negligently supplies false information for the guidance of other persons, he is liable for the losses sustained by those persons in reliance on that information. The Essexes argue that because, as subsequent tenants, they are within the class of persons who would foreseeably rely upon the 1955 survey, they are entitled to recover on this theory. They also assert there is liability in contract by pointing to the as-

surances attached to the 1955 survey that the boundaries staked out were accurate. This, they argue, is a warranty of the accuracy of the survey, which, if it does not run with the land, was certainly made to Davis and was assignable to the Essexes.

Ryan's response is that lack of privity is a defense to all of the Essexes' claims and that Davis had no cause of action to assign.

CONCLUSION—Ryan owed no duty to the Essexes with respect to the 1955 survey. However, Davis did have assignable contract rights which the Essexes, as assignees, are entitled to enforce.

The Essexes do not suggest that the error in Ryan's survey was in any way intentional. The tort of actual fraud requires actual knowledge, or reckless lack of knowledge, that the fact misstated is false. *Rhoda v. Northern Indiana Public Service Co.,* (1976) 171 Ind.App. 401, 357 N.E.2d 287. Any tort liability that Ryan may have to the Essexes must rest not on actual fraud, but on either constructive fraud or negligence.

The Essexes' motion to correct error restricts its tort theories to theories of negligence; constructive fraud is not mentioned in the motion, and no argument as to constructive fraud exists in the memorandum supporting the Essexes' motion to correct error. The Essexes therefore have waived consideration of constructive fraud for purposes of this appeal, for appellants may not introduce new substantive theories for the first time on appeal. *Danes v. Automobile Underwriters, Inc.,* (1974) 159 Ind.App. 505, 307 N.E.2d 902; *Bielat v. Folta,* (1967) 141 Ind.App. 452, 229 N.E.2d 474.

The *Restatement (Second) of Torts,* § 552, [hereinafter referred to as section 552] defines the tort of negligent misrepresentation:

"(1) One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered:

(a) by the person or one of a group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

It is upon this rather broad language that the Essexes rest their tort claim against Ryan. Our conclusion is that section 552 expands the scope of liability for negligent misrepresentation beyond existing case law and the existing public policy of this State. To the extent that it would provide for a negligent misrepresentation suit against Ryan, brought by the Essexes, complete strangers to his original contractual obligation, we must decline to adopt section 552.

Although it has been held that Indiana does not recognize the tort of negligent misrepresentation, *see English Coal Co. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, *trans. denied,* it is axiomatic that one who contracts to perform services may commit both a breach of contract and the tort of negligence when he negligently fails to perform in a workmanlike manner. *Flint & Walling Mfg. Co. v. Beckett,* (1906) 167 Ind. 491, 79 N.E. 503; *Staley v. Jameson,* (1874) 46 Ind. 159; *Capitol Builders v. Shipley,* (1982) Ind.App., 439 N.E.2d 217; *Shriner v. Union Federal Savings & Loan Ass'n,* (1955) 126 Ind.App. 454, 125 N.E.2d 168, *trans. denied.* And certain professionals, by virtue of the nature of their business, make

representations, render opinions, and give advice in the course of performing a contract. Thus, brokers are liable in tort for failure to disclose all facts within their knowledge that may be material to the matter in which they are employed, *Mason Produce Co. v. Harry C. Gilbert Co.,* (1923) 194 Ind. 462, 141 N.E. 613; attorneys are liable for failure to exercise ordinary care, skill, and diligence, *Anderson v. Anderson,* (1979) Ind.App., 399 N.E.2d 391; and abstractors may be held accountable for failure to fulfill their duty to prepare an accurate abstract. *Mayhew v. Deister,* (1969) 144 Ind.App. 111, 244 N.E.2d 448, *trans. denied.* Surveyors like Ryan, then, may be liable in tort for failure to skillfully discharge their contractual obligation. The next question is: To whom are they liable for their negligent misrepresentation?

The scope of tort liability arising out of contractual services has traditionally been framed in terms of concepts borrowed from the law of contracts. Thus, the tortfeasor's duty has been limited to only those parties in privity with him. *See Holland Furnace Co. v. Nauracaj,* (1938) 105 Ind.App. 574, 14 N.E.2d 339. The *Restatement* view attempts to abolish the privity rule. Although section 552 would not render the tortfeasor liable to all foreseeable plaintiffs, "[i]t is sufficient ..., insofar as the plaintiff's identity is concerned, that the maker [of representations] supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them." Section 552, comment h.

The Essexes urge us to accept the scope of liability provided for in the *Restatement.* Identifying themselves as among the "limited group of persons for whose benefit and guidance" the survey was made, they cite *Roberts v. Ball,* (1976) 57 Cal.App.3d 104, 128 Cal.Rptr. 901, *Kovaleski v. Tallahassee Title Co.* (Fla.Dist.Ct.App.1978) 363 So.2d 1156, *Silver v. George,* (Hawaii Ct.App. 1980) 1 Haw.App. 331, 618 P.2d 1157, *Rozny v. Marnul,* (1969) 43 Ill.2d 54, 250 N.E.2d 656, and *Stotlar v. Hester,* (N.M.Ct.App. 1978) 92 N.M. 26, 582 P.2d 403, to demonstrate that this case is within the rule of

section 552. They have, however, been unable to tie their theory to any moorings in Indiana law.

Our view is that a fair reading of Indiana law does not support the adoption of section 552 liability. Our analysis of a surveyor's liability to third parties under a tort theory begins with the case of *Peyronnin Construction Co. v. Weiss,* (1965) 137 Ind.App. 417, 208 N.E.2d 489.

Peyronnin Construction was the prime contractor on a construction project, and Weiss and his partner were engineers hired by a subcontractor to assist the subcontractor in preparing an estimate. The subcontractor relied upon Weiss's calculations, and Peyronnin, in turn, relied upon the subcontractor's estimate in preparing the bid which won it the general contract. Weiss's work was negligent, subjecting Peyronnin to cost overruns. Peyronnin sued Weiss, and Weiss's demurrer to the effect that the complaint failed to state a cause of action was sustained by the trial court.

The appellate court affirmed the dismissal. Acknowledging that Weiss was *aware* that the subcontractor would use his estimates in performing work for Peyronnin, the court nonetheless said, "In the case at bar we find no allegations of fact that there was any relationship existing between the parties to this appeal creating a duty of [Weiss] to [Peyronnin]. We also find no allegations concerning privity of contract between the parties, nor do we find alleged in either paragraph of said complaint that there was any consideration passing from [Peyronnin] to [Weiss]." 208 N.E.2d at 495.

Because Peyronnin was neither a privy nor a strict third-party beneficiary of the contract between Weiss and the subcontractor, the appellate court decided that Weiss owed no duty of care in the performance of services to Peyronnin and therefore could not be liable for his negligence. The court relied on *Ohmart v. Citizens Savings and Trust Co.,* (1924) 82 Ind.App. 219, 145 N.E. 577, and *Brown v. Sims,* (1899) 22 Ind.App. 317, 53 N.E. 779. Both cases involved faulty abstracts of title. In *Brown,* a land-

owner, hoping to borrow money from Brown, engaged Sims to prepare an abstract of title; Sims personally assured Brown that Brown could rely on the title being free of any defect or lien. In reliance on these assurances, Brown made a mortgage loan to the landowner. In fact, a lien had been recorded against the land, and Brown was left with a large deficiency when he was forced to foreclose the mortgage. The landowner being insolvent, Brown sued Sims. The trial court dismissed the complaint for want of a cause of action, and the appellate court reversed.

In *Ohmart,* the savings and trust company neglected to include judgment liens in an abstract of title prepared for the seller of certain real property. The purchaser, who was not dealing with either the seller or the savings and trust company at the time the abstract was prepared, was forced to satisfy the liens and sought redress against the savings and trust company. The directed verdict for the savings and trust company was affirmed.

The distinction, as was made clear by the courts in *Ohmart* and *Peyronnin,* was that in *Brown,* the abstractor understood that it was of the essence of his employment that a report be made to, and for the benefit of, a third party, the lender Brown. "It is immediately apparent that the court ... concluded that [Sims] owed a duty to [Brown] arising out of the contract, inasmuch as it was understood by all the parties that the abstractor's services were to be rendered for the use and benefit of [Brown], the third party to the transaction." *Peyronnin,* 208 N.E.2d at 494. That the person for whom the abstracting was done might ordinarily be expected to exhibit the abstract to unspecified others in the future, or induce others to rely upon the abstract, does not suffice to make the abstractor responsible to such unknown third parties. *Ohmart, supra,* 145 N.E. at 578.

■ The court in *Peyronnin* and *Ohmart* made, we think, a valid distinction between *knowledge* that a third party will rely on the opinion given and an *expectation* that unidentified others might rely on it. Un-

fortunately, the facts of *Peyronnin* demonstrate that the court failed to use this distinction in determining the scope of Weiss's liability. Weiss had *actual knowledge* that Peyronnin Construction would rely upon his work, and he was in contact with the company while preparing the estimates. The appellate court chose to ignore this evidence of knowledge and instead relied upon the absence of a contractual relationship, the lack of consideration, and Weiss's failure to show a third-party beneficiary status. Although the *Peyronnin* court seemed oblivious of an actual knowledge exception to the privity requirement, we are not. The rule should be applied to require that a plaintiff seeking recovery in tort from a surveyor must demonstrate either that he was in privity with the surveyor or that the surveyor had actual knowledge that the plaintiff would rely on the information given.

■ In rejecting section 552 liability, we are aware of Indiana exceptions to the rule that when a charge of negligence is based upon a breach of contractual duty, no cause of action arises in favor of one not in privity to the contract. *See, e.g., Barnes v. MacBrown & Co.,* (1976) 264 Ind. 227, 342 N.E.2d 619 (remote purchaser of a home may enforce builder-vendor's implied warranty of fitness for habitation upon discovering latent defects); *Hiatt v. Brown,* (1981) Ind.App., 422 N.E.2d 736, *trans. denied* (no privity required for suits against architects who have created an inherently dangerous condition); *Lane v. Barringer,* (1980) Ind.App., 407 N.E.2d 1173 (privity of contract not required if a personal injury action for a defective product sounds in tort). It is the difficulty in applying the privity rule and its exceptions that has led some jurisdictions to abolish completely the privity requirement in all tort actions. *See, e.g., Rozny, supra.* However, neither we nor the Essexes have found any Indiana authority to suggest that the law in Indiana is poised to adopt the radical extension of liability which would seem to be required by section 552.

An important distinction can be drawn between this case and those cases in which

Indiana has carved out exceptions to the privity requirement. This case does not involve the possibility of personal injury to consumers—a weighty factor in allowing remote plaintiffs to sue. *See* C. Katsoris, *Accountant's Third Party Liability—How Far Do We Go?* 36 FORDHAM L.REV. 191 (1967); Case Comment, *Torts: Accountant Liable to Third Party for Negligent Misrepresentation* 53 MINN.L.REV. 1375 (1969). When it first assaulted the privity barrier in 1964, our supreme court recognized a need to protect consumers from "products that were inherently dangerous to life or health." *J.I. Case Co. v. Sandefur,* (1964) 245 Ind. 213, 221, 197 N.E.2d 519, 522. And although the most recent Indiana Supreme Court opinion on this subject, *Barnes, supra,* does not limit its holding to actions for personal injury, it cannot be disputed that protection of personal safety was a significant factor in abolishing the privity requirement for suits between remote purchasers and builder-vendors of homes. Writing for the court, Justice Arterburn questioned the distinction between economic loss and personal injury:

> "If there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury? Should it not put those who prevent personal injury on the same level as those who fail to anticipate it?"

342 N.E.2d at 621. Thus, although a remote purchaser was not required to "break his neck" before establishing a cause of action, the *Barnes* court sought to prevent the potential physical injury latent defects in the home can produce. Inaccurate surveys of the type involved here do not pose such a threat.

Furthermore, although our decision is strictly confined to the facts presented[1]—a surveyor's liability to unknown third parties—we must express reservation concerning the general effect of section 552 liability. We are not convinced that the economic benefits accruing to consumer plaintiffs would outweigh the hazards of potential liability which abolition of the privity requirement would impose upon providers of professional opinions. We share with Justice Cardozo the concern he expressed in *Ultramares Corp. v. Touche,* (1931) 255 N.Y. 170, 174 N.E. 441:

> "If liability for negligence exists, a thoughtless slip or blunder ... may expose [professionals] to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may exist in the implication of a duty that exposes to these consequences."

174 N.E. at 444. Justice Cardozo's caution is particularly relevant today given the increasing litigiousness of our society and the rising cost of malpractice insurance. Section 552 does not, in our view, sufficiently guard against imposing unwieldy duties upon providers of professional opinions—professionals would be like the bowman in Longfellow's poem, *The Arrow and The Song,* "I shot an arrow into the air, it fell to earth I know not where." Lest the courts drive professionals from their chosen vocations, we believe the privity requirement, subject to an actual knowledge exception, properly balances the competing interests of consumer and professional in a case such as the one before us. And we are encouraged that other jurisdictions have reached

---

1. Our supreme court has employed a methodology of abolishing the privity barrier on a step-by-step basis, depending upon the facts of a given case. *Cf. Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281 (deciding the statute of limitations question, but expressing no opinion on the question whether a disappointed named beneficiary under a will may maintain a malpractice action against the errant lawyer).

Similarly, we limit our decision, recognizing different concerns which may be involved with respect to the liability of other professionals. *Compare* Annot., 46 A.L.R.3d 979 (1972) (accountant's liability) *with* Annot., 45 A.L.R.3d 1181 (1972) (attorney's liability) *and* Annot., 34 A.L.R.3d 1122 (1970) (abstractor's liability) *and* Annot., 35 A.L.R.3d 504 (1971) (surveyor's liability).

the same conclusion in considering similar questions. *See, e.g., Koch Industries, Inc. v. Vosko,* (10th Cir.1974) 494 F.2d 713 (applying Kansas law); *Wright v. Allmon-Mack Agency,* (1980) 270 Ark. 265, 603 S.W.2d 483; *Ryan v. Kanne,* (1969) Iowa, 170 N.W.2d 395; *Anderson v. Spriestersbach,* (1912) 69 Wash. 393, 125 P. 166.

We conclude, therefore, that Ryan owed no duty to the Essexes because he had no knowledge they would rely upon his survey and because he was not in privity with them.

The Essexes have another string to their bow. They maintain, persuasively, that Davis's assignment to them overcomes the privity barrier, vesting in them a cause of action against Ryan. While this assignment was not part of the original complaint, it was properly raised in the response by the Essexes to the motion for summary judgment and is therefore a part of this case. *See* T.R. 56(C). As we shall show, Davis did execute a valid assignment of his contract rights against Ryan—rights which could form the basis for the Essexes' suit against Ryan.

Assignments are transfers that substitute "a new party as the focus of legal relations" with respect to the thing assigned. 4 A. CORBIN, CORBIN ON CONTRACTS (1951) § 861 at 422. Subject to limitations which need not concern us here, tort claims are assignable, *see generally* Annot., 57 A.L.R.2d 603 (1958); Annot. 40 A.L.R.2d 500 (1955), as are rights attached to a contract, including the right to sue for breach of contract. *Armstrong v. Illinois Bankers Life Ass'n,* (1940) 217 Ind. 601, 29 N.E.2d 415; CORBIN, *supra* § 860.

Ryan leans heavily upon the maxim that an assignee can acquire no greater rights than those possessed by the assignor. *See Southern Surety Co. v. Merchants and Farmers Bank,* (1931) 203 Ind. 173, 176 N.E. 846; *University Casework Systems, Inc. v. Bahre,* (1977) 172 Ind.App. 624, 362 N.E.2d

155, *trans. denied; Methodist Hospital v. Town and Country Mutual Insurance Co.,* (1964) 136 Ind.App. 184, 197 N.E.2d 773. Because there was no damage to Davis,[2] Ryan asserts that Davis had no cause of action to assign, either in tort or in contract. But Davis attempted to assign more than simply a cause of action; there was an assignment of "*any and all rights,* interests, property, claims, demands, cause of action, or chose in action". *Record* at 212 (emphasis supplied). So, it is germane to ascertain exactly what was assigned and the extent to which the assignment benefitted the Essexes.

A right to damages for breach of contract is assignable. *Armstrong, supra;* J. MURRAY, MURRAY ON CONTRACTS (1974). But so too are virtually all contract rights,[3] and Davis assigned to the Essexes "any and all rights" due from Ryan. As such, those rights may generally be defined as rights arising out of the survey contract operating as a constraint upon Ryan's conduct—they were obligations which Ryan was required to fulfill by virtue of his contract. CORBIN, *supra* § 860. More specifically, Davis had a right to workmanlike performance from Ryan. And that right *is to be distinguished from the remedy,* a cause of action, for the violation of the right.

Professor Corbin provides an example of the distinction between contract rights and contract remedies:

"The seller of specific goods may make an accompanying promise to the buyer, such as a warranty of quantity or quality. . . . [T]here must [then] be some expression of an intention to assign the contract right [to a subsequent sub-purchaser]. If such an expression accompanies the sale, there should be no doubt in any ordinary case that it is legally operative, *whether at the time of sale there has already been a breach of the warranty or not. If a breach has occurred, the right to compensation therefore is assignable to anyone.*

---

2. The Essexes allege in their complaint that they are the *only* parties who have suffered a loss from Ryan's negligence. *Record* at 182.

3. With the exception of contract rights involving personal trust or confidence. *University Casework Systems, supra.*

*Even before the breach the primary contract right created by the warranty can certainly be assigned to a sub-purchaser of the goods."*

CORBIN, *supra* § 857 at 411–12. Thus, it matters not whether Davis had a complete cause of action against Ryan at the time the assignment was made. Rather, it matters only that he had assignable contract rights—obligations owed to him by Ryan—which could be assigned to the Essexes in the same manner as a warranty accompanying the sale of goods was assigned in Professor Corbin's example. And, because "an assignment ordinarily passes whatever is necessary to make it completely effectual, and vests in the assignee all rights, *remedies,* and contingent benefits which are incidental to the thing assigned . . .", 6A C.J.S. *Assignments* § 76 (1975) (emphasis supplied), the Essexes may now use their assigned right as the basis for *their own* cause of action. The *right* to workmanlike performance was Davis's to assign to the Essexes; the *remedy* is the Essexes' to bring either in tort or in contract because, as previously discussed, if Ryan breached his contractual duty it was both a breach of

contract and a tortious breach of his obligation arising out of the contract.

To summarize: Absent the assignment from Davis to the Essexes, Ryan owed no duty of care to the Essexes because he had no knowledge they would rely upon his survey and because he was not in privity with them. However, because Davis assigned his basic contract right to a workmanlike survey to the Essexes, the right became the Essexes'. They were entitled to go to trial to prove their cause of action, either for negligence or for breach of contract.[4]

The summary judgment is reversed and the cause remanded for proceedings consistent with this opinion.

SHIELDS and SULLIVAN, JJ., concur.

---

**4.** We recognize that the statute of limitations protects defendants from liability extending over an unreasonable period of time. The statute is an affirmative defense, to be raised by answer, by a motion under Ind.Rules of Procedure, Trial Rule 12(B)(6), or by a motion for summary judgment. *Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281, 294. The *only* attempt made by Ryan to challenge the timeliness of

the Essexes' actions is his argument that the Essexes' claim is barred by IC 34–1–2–1. We need not express an opinion on the applicability of this statute; the statute is not available to Ryan as a defense because it was never timely raised. Therefore, any question with respect to the timeliness of the Essexes' suit, including the effect of Davis's last-minute assignment to the Essexes, is not before us.