**Helen C. HOLTZ, Plaintiff,**

v.

**J.J.B. HILLIARD, W.L. Lyons, Inc., Capital Guardian Trust Company, and American Funds Service Company, Defendants.**

**No. EV 95–209–C H/H.**

United States District Court,
S.D. Indiana,
Evansville Division.

March 23, 1998.

Jack N. VanStone, Kenneth G. Haynie, Jr., Evansville, IN, for Helen C. Holtz.

David L. Clark, Kahn Dees Donovan & Kahn, Evansville, IN, for Hilliard & Lyons.

Donald M. Snemis, Ice Miller Donadio & Ryan, Indianapolis, IN, Ross E. Rudolph, Mattingly, Rudolph, Fine & Porter, Evansville, IN, for Capital Guardian Trust Co., American Funds Service Co.

## ENTRY ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

HAMILTON, District Judge.

Plaintiff Helen C. Holtz believes her late brother, Dr. Robert Ziss, intended to name her as the beneficiary of an individual retirement account upon his death. Dr. Ziss had previously named Mrs. Holtz as the beneficiary of the account, but when he transferred the account to a new trustee a few months before his death, Dr. Ziss left the beneficiary designation blank. A state probate court rejected Mrs. Holtz's petition to reform the document to name her as the beneficiary. As a result, the account became part of Dr. Ziss's estate upon his death. Pursuant to his will, Mrs. Holtz receives only the income from the account during her lifetime.

Now Mrs. Holtz has sued the trustees of the account for alleged negligence. She contends they breached a duty to her by failing to ask Dr. Ziss whether he actually intended to leave the beneficiary designation blank, and by using an IRA form with the beneficiary designation on the back of the first sheet of a tri-fold form. This court has jurisdiction over the subject matter under its diversity jurisdiction. The defendants have moved for summary judgment. As explained below, their motions must be granted because the defendants did not owe a legal duty to plaintiff Holtz.

### Standard for Summary Judgment

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, the court should grant summary judgment if but only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material

fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Not all factual disagreements are material. Factual disagreements that are irrelevant or immaterial under the applicable substantive law do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the parties' submissions, the court must consider the evidence in the light reasonably most favorable to the non-moving party. The issue is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. Summary judgment is not a substitute for a jury's determinations about genuinely disputed facts. At the same time, summary judgment is not a disfavored shortcut, but an essential part of the Federal Rules of Civil Procedure.

### Findings of Undisputed Fact

Based on the foregoing standard, the following facts are undisputed or reflect the evidence in the light reasonably most favorable to plaintiff Holtz as the party opposing summary judgment.

*The Parties:* Dr. Robert Ziss was a physician in Evansville, Indiana, and was an avid traveler and art lover. He died on November 3, 1993. At the time of his death, his closest relatives were his sister, plaintiff Helen Holtz, and her children, Albert Holtz, Jr. and Susan Nelson.

From 1988 until his death in 1993, Dr. Ziss sought and received investment advice from Nancy Gaunt, an Evansville investment broker with defendant J.J.B. Hilliard W.L. Lyons, Inc. ("Hilliard Lyons"). Defendant Capital Guardian Trust Company ("CGTC") serves as trustee for IRAs and retirement plans within a family of mutual funds known as the "American Funds Group." CGTC's responsibilities include holding retirement plan assets, making required tax law disclosures, and ensuring that the IRAs and retirement plans meet legal requirements of ERISA and other tax laws. Defendant American Funds Service Company ("AFSC") is the transfer agent for the American Funds Group and acts as an agent that keeps records for CGTC. AFSC's role in administering these funds is to provide customer service for shareholders who own the funds and the brokers who sell the funds. AFSC's responsibilities include answering telephone calls and mail, completing transactions on accounts, and establishing new accounts. AFSC receives approximately 350,000 to 400,000 IRA applications each year. About 10 percent of those applications do not designate a beneficiary.

*Dr. Ziss's Investments:* Dr. Ziss had several substantial investments before his death, including a self-directed IRA with investments in two separate mutual fund groups— American Funds and Putnam Funds. Before May 1993 the trustee of Dr. Ziss's accounts in both fund groups had been Hilliard Lyons. For his accounts with both fund groups, Dr. Ziss had previously designated plaintiff Holtz as the beneficiary upon his death. Dr. Ziss decided in May 1993 to change the trustees for both funds. He decided to change the trustee of his Putnam Funds accounts to Putnam Fiduciary Trust Company and the trustee of his American Funds accounts to CGTC, the in-house trustee entities for the two fund groups. By "cutting out the middle man" in this way, he could receive dividend checks more quickly. Nancy Gaunt of Hilliard Lyons sent application forms to Dr. Ziss to accomplish the change. Dr. Ziss filled them out, signed them both on May 13, 1993, and sent them together to Hilliard Lyons.

For the Putnam Funds accounts, Dr. Ziss again designated plaintiff Helen Holtz as the beneficiary upon his death. On the application for the American Funds account, however, Dr. Ziss left the beneficiary designation blank. That blank space is at the heart of this lawsuit. Mrs. Holtz contends that Dr. Ziss intended for her to be the beneficiary after his death and would have listed her on the application but for the alleged negligence of the defendants in failing to call the blank space to his attention before processing his application and in designing the form with the beneficiary designation on the back of the

first page, after the applicant's signature.[1] The defendants contend that leaving the beneficiary designation blank is a perfectly valid choice that has the effect of directing the funds to be included as part of the investor's estate upon his death. The application for the American Funds group includes in its "Terms and Conditions" section the following instruction:

> The Participant shall have the right to designate or change a beneficiary to receive any benefit from the Participant Account to which such Participant may be entitled in the event of the Participant's death prior to complete distribution of the Participant's Account. If no such designation is in effect at the time of the Participant's death, the Participant's beneficiary shall be the Participant's estate. A Participant may designate or change a beneficiary only by written notice to the Trustee in a form acceptable to the Trustee, but the Trustee shall have no responsibility to determine the validity of the beneficiary designation.

Gaunt Dep. Ex. 4(b), page 4, section 5(b). The signature line on the American Funds application included an acknowledgment that the applicant had read the "Terms and Conditions" section. Dr. Ziss signed the acknowledgment.

Viewing the evidence in the light most favorable to plaintiff, before Hilliard Lyons sent the American Funds application form to Dr. Ziss, either Ms. Gaunt or her secretary filled out portions of the form using a typewriter and highlighted in yellow several portions for Dr. Ziss to fill out by hand. The highlighted items were date of birth, daytime phone number, signature, and date on the front page of the form. The beneficiary designation was on the back of that page and was not highlighted. Pl.Ex. 21 (Docket No. 56—first page of original application form). After receiving the form from Dr. Ziss, Hilliard Lyons forwarded it to CGTC and/or AFSC where it was processed according to Dr. Ziss's written instructions.

*Dr. Ziss's New Will:* On August 30, 1993, about three and a half months after he filled out the new IRA applications, Dr. Ziss executed a new will. Def. Ex. A. That was the will admitted to probate. In the will, Dr. Ziss left cash bequests to plaintiff Holtz's son and daughter. He also left various items of personal property to friends and family members, including plaintiff Holtz. His will provided that the bulk of the estate be put into a charitable remainder trust. Under the terms of the trust in the will, plaintiff Holtz receives all the net income from the trust as long as she lives. After her death, the remainder of the estate will be split between the Chicago Art Institute and the Honolulu Academy of Arts in gifts in the names of the parents of Dr. Ziss and Mrs. Holtz.

Because Dr. Ziss had listed plaintiff Holtz as the beneficiary of his IRA account with the Putnam Funds, that account became her property upon his death, without passing through the probate process. Because Dr. Ziss had not designated any beneficiary for his American Funds IRA account, that account became the property of his estate. As a practical matter, that means that Mrs. Holtz receives the income from the American Funds account for the rest of her life, but she cannot dispose of the assets and the assets will go to the two art museums upon her death.

The day after Dr. Ziss died, James M. Schwentker, Jr. (the personal representative of Dr. Ziss's estate and the attorney who drafted his last will) initiated probate proceedings in the Vanderburgh Superior Court. Dr. Ziss's will was admitted to probate. At the time of Dr. Ziss's death. Ms. Gaunt, Mrs. Holtz, and Mr. Schwentker all believed that Mrs. Holtz had been designated as the beneficiary for the American Funds account after Dr. Ziss's death. They later discovered, however, that Dr. Ziss had left the beneficiary designation blank. During the probate proceedings, therefore, plaintiff Holtz and Mr. Schwentker together petitioned the court to "reform" Dr. Ziss's application for the American Funds IRA account by insert-

---

1. On the application for the American Funds account, the beneficiary designation is on the back of the first of three attached pages that fold together in a "tri-fold." The applicant's signature appears on the front of the first of the three pages.

ing the name of Helen Holtz as the designated beneficiary. The petition argued that the beneficiary designation was left blank by "inadvertence and mistake" on the part of Hilliard Lyons. Def. Ex. B at 3. At the time of Dr. Ziss's death, the value of the American Funds account was about $203,000. The two art museums that stood to receive the property after Mrs. Holtz's death appeared and objected to the petition to reform the application.

The probate court heard evidence and the parties litigated the issue of Dr. Ziss's intent. Judge Robert Lensing of the Vanderburgh Superior Court denied the petition for reformation. His order noted that Mrs. Holtz had appeared and had been represented by counsel and then stated:

> The Petitioner asks that an IRA application, which was executed by Robert C. Ziss ("Decedent") prior to this death, be reformed. More specifically, the Petitioner seeks to have Helen Holtz, the Decedent's sister, named as the beneficiary on the IRA application at issue. On the IRA application in question, the Decedent did not designate a beneficiary. The Petitioner contends that it is within the Court's equitable power to reform the IRA application, and that there is ample evidence of the Decedent's intent to name Helen Holtz as the beneficiary of the IRA account at issue. In response, The Art Institute of Chicago and the Honolulu Academy of Arts ("Charitable Beneficiaries") agree that the Court may have equitable power to reform certain instruments under certain circumstances. However, the Charitable Beneficiaries maintain that the Petitioner has not alleged a proper basis for reformation, so that the Court does not have discretion to reform the instrument in this instance. The Charitable Beneficiaries further submit that the facts do not support the requested reformation even if the Court were to determine that reformation is an available remedy.

> After reviewing the instant motions and having heard the testimony of the witnesses, the Court finds that the reformation requested in the instant petition should not be granted. The IRA application will not be reformed to reflect Helen Holtz as its beneficiary.

Def. Ex. H. The court later denied without explanation Mrs. Holtz's and the personal representative's motion to correct errors. Def. Ex. M. Mrs. Holtz and the personal representative did not appeal that decision. As a result, Dr. Ziss's American Funds accounts became part of his estate and will be distributed according to his will. Mrs. Holtz is receiving the income from the property in the residual estate. Upon her death the property will be divided between the two art museums.

*Plaintiff's Affidavits:* In opposition to the defendants' motions for summary judgment, plaintiff Holtz has submitted affidavits from Donald R. Balser, Amy Vidal, and James M. Schwentker, Jr. Mr. Balser is an attorney and an experienced trust officer with Old National Bank in Evansville, Indiana. In his affidavit, he asserts that a trustee should never accept a trust document with a blank beneficiary designation, and he notes that in his experience, beneficiary designations are "rarely, if ever, on the back page of any trust document." He further states his opinions that Hilliard Lyons violated its fiduciary duties by accepting Dr. Ziss's application with the blank beneficiary designation; that the application form was "defective" because the beneficiary designation was on the back of the first page; and that CGTC and AFSC violated their fiduciary duties by ignoring the blank beneficiary designation.

Amy Vidal is an administrative assistant with NATCITY Investment Company in Evansville, Indiana, and is responsible for establishing individual retirement accounts. She states in her affidavit that her company requires that a beneficiary designation be completed before an account can be opened.

Attorney Schwentker was also a personal friend and neighbor of Dr. Ziss. In his affidavit, Mr. Schwentker states that Dr. Ziss told him that "most of his investment accounts were with the Hilliard Lyons brokerage firm" and that "Helen Holtz would get all of the funds held by Hilliard Lyons upon his death." Mr. Schwentker's affidavit does not state when these discussions occurred. Mr. Schwentker also states that after Dr. Ziss

died, he spoke with Nancy Gaunt of Hilliard Lyons. Ms. Gaunt told him that she understood that Dr. Ziss had intended to keep the same beneficiary, Helen Holtz, that he had designated for his previous IRA accounts, but that he had left the beneficiary designation blank on the American Funds account, and that Ms. Gaunt had not seen the blank designation until after Dr. Ziss's death. Ms. Gaunt told Mr. Schwentker that she and her secretary should have caught the omission. Mr. Schwentker also states that Dr. Ziss was "a very detailed individual and generally careful about his financial matters" and, in Mr. Schwentker's opinion, would not intentionally have left a beneficiary designation blank.

Additional facts are noted below where relevant, applying the same summary judgment standard of viewing the admissible evidence in the light reasonably most favorable to plaintiff.

### Discussion

In a final and unappealed judgment the probate court has ruled that the two art museums are entitled to the assets in the American Funds account upon the death of Mrs Holtz. In this action, Mrs. Holtz seeks relief from a different direction. Here she has sued Hilliard Lyons and the two American Funds account trustees. She contends again that Dr. Ziss intended to name her as beneficiary of the American Funds account. The core of her claims is the assertion that defendants were negligent in failing to determine that she, rather than Dr. Ziss's estate, was the intended beneficiary of his American Funds account. Her theory is that the defendants should have noticed that Dr. Ziss left the beneficiary designation blank, that they had a legal duty to ask Dr. Ziss whether he intended to leave the designation blank, and that the duty runs in favor of any persons Dr. Ziss actually intended should be beneficiaries. She also asserts the American Funds application form was "defective" because the beneficiary designation was on the back of the first page, after the applicant's signature.

The defendants have raised three independent grounds for summary judgment. First, they contend as a matter of law that they owed no duty to plaintiff Holtz to question Dr. Ziss's application. Second, they contend that a reasonable jury could not find on admissible evidence that Dr. Ziss actually intended for plaintiff to be the beneficiary of the American Funds account. Third, they argue that plaintiff has already litigated and lost the issue of Dr. Ziss's intent in the probate court, so she is collaterally estopped from litigating the issue here. Indiana law governs these issues in this case. The court concludes that defendants are entitled to summary judgment because they did not owe any legally cognizable duty to plaintiff. The court does not reach the issues of the evidence of Dr. Ziss's actual intentions or collateral estoppel.

 To prove a claim of negligence, the plaintiff must establish that the defendant had a legal duty to exercise due care that ran in favor of the plaintiff. *E.g., Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991). The existence of such a legal duty is a question of law for the court to decide; if the defendant owes no duty to the plaintiff, the plaintiff cannot prevail. *Id.; Tibbs v. Huber, Hunt & Nichols, Inc.,* 668 N.E.2d 248, 250 (Ind.1996); *Lockwood v. Bowman Construction Co.,* 101 F.3d 1231, 1234 (7th Cir.1996) (applying Indiana law). In deciding whether the law should recognize an obligation on the part of a defendant to conform its conduct to a standard of care for the benefit of a plaintiff, the Supreme Court of Indiana considers and balances three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb v. Jarvis,* 575 N.E.2d at 995.

 In analyzing the issue of duty in this case, it is important to focus on two distinct questions: first, the extent of defendants' duties to Dr. Ziss, and second, whether any defendant owed any duty to plaintiff Holtz. Plaintiff Holtz's claims are built upon the premise that the investment companies her brother dealt with had an obligation to double-check with him about his choices on the application form, to explain the consequences of his choices, and to ensure that he actually intended the consequences of the choices re-

flected on the form. She is arguing further that the duty runs in favor of any third party who can prove later that the investor subjectively intended to name the third party as his or her beneficiary. Plaintiff has not identified any authority from Indiana or from any other jurisdiction imposing on financial services companies a similar duty to an investor under circumstances comparable to those presented here, let alone a duty running in favor of unknown third parties to the investment relationship. In addition, recognizing a duty under these circumstances would impose new, substantial, and truly paternalistic obligations on financial services companies. Considering the three factors identified in *Webb v. Jarvis* for weighing recognition of new legal duties, the court concludes that the Indiana courts would not recognize a duty in favor of Mrs. Holtz in the circumstances of this case.

## I. *The Relationships Between the Parties*

In looking at the relationship between the parties, the court focuses first on Dr. Ziss's relationships with the defendants and then on Mrs. Holtz's relationship (more precisely, her lack of relationship) with the defendants. Dr. Ziss was a customer, of course, of the defendants, and his IRA accounts were trusts. The fact that the accounts were trusts is not as significant as plaintiff argues. Her arguments and evidence use the existence of some fiduciary duties to obscure the more relevant issue of the scope of the trustees' fiduciary duties. The trustees owed fiduciary duties to Dr. Ziss to hold and preserve the assets in the account for his benefit, and presumably to communicate with him about the assets and to take other steps to preserve the tax benefits of the form of the investments in tax-deferred accounts. Those limited and specific fiduciary duties, however, did not expand to make any trustee the equivalent of an attorney preparing a will for Dr. Ziss. The undisputed facts show that none of the defendants had undertaken fiduciary duties to Dr. Ziss that would include advising him about his estate planning or challenging his intentions concerning the designation of beneficiaries.

To CGTC and AFSC, Dr. Ziss was simply a customer to whom they owed limited fiduciary duties in managing the assets in his account. Defendant Hilliard Lyons is in a slightly different position, for Nancy Gaunt had a business relationship with Dr. Ziss for several years as an investment adviser. Also, there is evidence that would allow a reasonable jury to find that Ms. Gaunt *thought* she should double-check with Dr. Ziss about the beneficiary designation. There is no evidence, however, that Ms. Gaunt undertook fiduciary duties in helping Dr. Ziss with estate planning so that she would have any legally enforceable duty to question his choices about disposition of his property after his death.

On its face, Dr. Ziss's application for the American Funds IRA was complete and internally consistent, containing no ambiguities. Contrary to plaintiff's arguments and the Balser affidavit, even if Dr. Ziss did not designate a beneficiary for distribution upon his death, the undisputed facts show that this trust was not incomplete. Dr. Ziss himself was the beneficiary of the trust during his life. In the absence of a designated beneficiary, the trust assets would be treated like any other cash, bank account, stocks, real property, or other property upon the death of the owner—the assets are treated legally as the property of the decedent's estate and are distributed according to a valid will or according to statutes that apply in the absence of a will. There was nothing in Dr. Ziss's relationship with any of these defendants that would have imposed on any of them an obligation to question him about whether he actually intended that the property be distributed after his death as he had provided in the account paperwork.

Plaintiff Holtz has not identified any case law from Indiana or any other jurisdiction imposing a duty even in favor of Dr. Ziss himself under circumstances like this one. The Indiana case most closely on point here is *Gaunt v. Peoples Trust Bank*, 177 Ind. App. 285, 379 N.E.2d 495, 496–97 (1978). In that case Charles Gaunt had asked a bank to add his name to a savings account held in the name of his mother Clara Gaunt, who was in poor health. The bank gave Charles a signa-

ture card for his mother to sign to authorize the change. Both Charles and Clara signed the card. The bank changed the account to a joint account with a right of survivorship. Charles later petitioned for bankruptcy. Clara died while the bankruptcy petition was pending, and the assets in the account were treated as part of Charles' bankruptcy estate. Clara's estate sued the bank, arguing that the bank was negligent in failing to ascertain whether Clara understood the effects of creating a joint account. The court of appeals held that the trial court had properly entered judgment for the bank as a matter of law, without allowing the jury to consider the issue:

> The executor argues that the bank was under a duty, before permitting Clara to open a joint account, to ascertain whether such an account, with its concomitant right of survivorship, was consistent with her wishes. We accept the executor's contention that the relationship between a bank and its customers may, in some instances, be such as to impose that kind of duty. This, however, is not one of those instances. The money belonged to Clara and was hers to do with as she pleased. The bank was not her financial or estate planning advisor. It was merely the depository of her funds and, as such, acquired no investigatorial duties. The signature card very clearly explained the nature of the joint account. Clara was afforded not only an opportunity to read the card before signing it, but also an opportunity to make further inquiries if she did not understand the card's contents. Her alleged failure to understand that she was opening a joint account was not due to the breach of any duty on the bank's part.

379 N.E.2d at 496–97. Similarly here, the American Funds account belonged to Dr. Ziss, and he was free to provide for its disposition after his death as he wished. The IRA application explained (albeit in fine print) that leaving the beneficiary designation blank would result in his estate becoming his beneficiary. None of these defendants had undertaken any duties to Dr. Ziss that would have required them to question him to be sure that he had taken the proper steps to accomplish his subjective intentions for that disposition after his death.

Also instructive here is the Seventh Circuit's decision in *Shearson Hayden Stone, Inc. v. Leach*, 583 F.2d 367 (7th Cir.1978), in which an investor had a margin account for trading commodity futures. After some market reversals, the account was "undermargined." The investor failed to respond to demands to deposit additional funds in his account to make up the deficit. The brokerage firm liquidated his account and sued for the difference. The investor argued in his defense that the brokerage firm acted improperly by failing to liquidate his account sooner, before the losses mounted higher. The Seventh Circuit held that the district court did not err in refusing to instruct the jury that a brokerage firm owed fiduciary duties to the investor in deciding when to liquidate his account. 583 F.2d at 371–72. The court explained:

> Although in some circumstances a broker would stand in a fiduciary relationship to its customer, those circumstances are not present here. Leach had a "nonsupervised" or "discretionary" account with SHS which means that Leach made all the investment decisions. He was a sophisticated investor who did not rely on his broker for advice. In *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 337 F.Supp. 107 (N.D.Ala.1971), *aff'd*, 453 F.2d 417 (5th Cir.1972), the plaintiff was a customer who maintained a nonsupervised commodity account with the defendant brokerage house. He alleged that he had incurred losses in the commodities market because of the defendant's negligent failure to advise him of material market information. The court stated:

>> To make this defendant or any other broker the guardian of a customer such as the plaintiff would destroy an important part of the marketplace....

>> The defendant here was not an investment advisor and had *no fiduciary relationship* to the plaintiff which required relaying of any market information.

> 337 F.Supp. at 113 (emphasis added). Similarly, in the instant case there was no fiduciary relationship, and thus the district

court properly refused to instruct the jury on such a relationship.

583 F.2d at 371–72 (emphasis in original). CGTC and AFSC had no relationship with Dr. Ziss evenly remotely approaching one that could support a duty to question his estate planning choices. As noted above, Ms. Gaunt of Hilliard Lyons had given Dr. Ziss advice about different investment vehicles, but he had a self-directed IRA account and made his own investment decisions. More important for present purposes, there is no evidence here that Ms. Gaunt had undertaken to give, or that Dr. Ziss expected from her, professional advice concerning estate planning and the disposition of his property after his death.

 Even if there were room to argue that any of the defendants owed any relevant fiduciary duties to Dr. Ziss, none of them undertook any fiduciary duties or duties of care toward plaintiff Holtz. Defendants CGTC and AFSC had no reason to know of Mrs. Holtz's existence, let alone to question Dr. Ziss's application or his estate planning decisions. In the absence of privity between the plaintiff and the defendant, Indiana courts have not recognized a legal duty under circumstances like this. Nancy Gaunt of defendant Hilliard Lyons knew of Mrs. Holtz's existence and knew that Dr. Ziss had previously named her as a beneficiary of these assets. Dr. Ziss was perfectly free to change his mind about such matters, however, and there is no reason to believe that he sought or relied on Ms. Gaunt's professional advice about such matters or that she provided it.

The available case law on duties to third parties does not lend any meaningful support to recognition of a duty to a third party like Mrs. Holtz here. Plaintiff Holtz relies on Indiana cases establishing that, despite an absence of privity, a known intended beneficiary of a client's will may sue an attorney for negligence in preparing the client's will. See *Walker v. Lawson,* 526 N.E.2d 968, 968 (Ind.1988), adopting in relevant part *Walker v. Lawson,* 514 N.E.2d 629, 633 (Ind.App. 1987); *Hermann v. Frey,* 537 N.E.2d 529, 531 (Ind.App.1989). As the court of appeals explained in *Walker,* the sole purpose in drafting the will is to benefit known third parties. 514 N.E.2d at 633. By recognizing a duty in that limited situation, however, the Indiana courts have not opened up a duty toward (and potential liability to) an unlimited and unknown number of potential plaintiffs. See *id.* at 633–34 (known intended beneficiary may bring action for attorney's negligence, but that "does not mean a lawyer is liable to the entire world for professional incompetence").

There is no reason to expect Indiana courts to expand *Walker* to any situation like the one presented here. In fact, the court in *Walker* took care to distinguish *Essex v. Ryan,* 446 N.E.2d 368 (Ind.App.1983), a case cited by defendants here. In *Essex* the court of appeals held that a surveyor of real estate did not owe a duty of care to remote purchasers of the real estate with whom he had no contractual relationship. In *Essex* the court specifically declined to adopt Section 552 of the Restatement (Second) of Torts. It adhered instead to the traditional privity requirement in Indiana law, while recognizing exceptions if the defendant's conduct created a possibility of personal injury or if the defendant actually knew that the plaintiff would be relying on his professional work. See 446 N.E.2d at 372–73. The *Walker* court adopted and applied the latter exception for known and intended beneficiaries of a will. 514 N.E.2d at 633. Neither of these circumstances is present in this case, however, and recognition of a duty on the part of these defendants to plaintiff Holtz would mark a dramatic extension of Indiana law concerning duties to third parties.

## II. *Foreseeability of Harm*

 There is always a possibility that competent adults can make mistakes in arranging their financial affairs, so that the consequences after their deaths are not what they actually intended. Businesses in the position of these defendants are not in a position to foresee when their competent adult customers have failed to state their true intentions. Businesses like CGTC and AFSC certainly are not in a position to foresee harm to an unknown and unidentified (but subjectively intended) beneficiary like

Mrs. Holtz. Also, there was nothing special about this situation that created any heightened risk of harm to unknown and unidentified (but subjectively intended) beneficiaries.

## III. *Public Policy*

█ Public policy concerns weigh heavily against recognition of a duty on the part of any defendant under these circumstances. Imposing a duty on any of these defendants would impose a new set of paternalistic responsibilities on financial services companies. Those new duties would add cost and delay to investment transactions while the businesses took steps to ensure that their competent adult customers were truly certain that they had arranged their property and affairs as they intended. As a result, customers who are capable of managing their own affairs and making their own decisions would be forced to pay for additional (and intrusive) services for which they have neither any need nor any desire. Under existing law, a person who wants estate planning advice (backed up by potential liability for professional negligence) may pay for such advice separately, by consulting a lawyer or other professional for advice on the specific problems. A company that offers IRA account services need not, however, undertake such duties to all its customers, let alone to all persons who might be able to produce more or less persuasive evidence after a customer's death suggesting that the customer's subjective intentions were different from those reflected on the paperwork the customer completed.

Thus, the three factors identified in *Webb v. Jarvis* all weigh against recognizing a new and unprecedented duty that could hold any of these defendants liable to Mrs. Holtz for having failed to stop her brother from making (what the court assumes to have been) a mistake in accomplishing his estate planning goals.

█ In support of recognizing a duty, plaintiff Holtz relies less on case law than on the affidavit of Donald R. Balser, an attorney who has been a trust officer for Old National Bank in Evansville, Indiana for more than thirty years. (He also has had management responsibilities there.) Mr. Balser states that it is his practice, and the practice of other trust officers and trust departments with which he is familiar, to examine closely any new trust document to make certain it is complete and contains no ambiguities. He also states his opinion as follows:

3. A trustee should never accept any document, regardless of any agreement provisions to the contrary, with a blank beneficiary designation without establishing with the grantor, settlor or person establishing the account what is their intent. It is my personal experience as a trust officer that the provisions of a trust such as the appointment of a trustee or designation of a beneficiary are rarely, if ever, on the back page of any trust document. In no event should important trust provisions come after the signature on the document of the grantor, settlor or individual establishing the trust account.

4. I have read the depositions of Helen Holtz, Nancy Gaunt, and Don Sainsbury and examined the exhibits attached. I found that Hilliard Lyons failed to carefully examine the documents transferring the Robert Ziss IRA Trust with Hilliard Lyons to Capital Guardian Trust and discover that the beneficiary designation was blank and see it was filled in. In my opinion, this was a violation of their fiduciary duties as Trustee.

Mr. Balser's affidavit is not sufficient to establish the existence of a duty running in favor of Mrs. Holtz in this case. First, Mr. Balser's affidavit purports to instruct the court on a question of law. It also does so without going through the relevant analysis under Indiana law. In addition, Mr. Balser's affidavit, based as it is upon his experience in the trust department of an Evansville bank, does not establish that he is qualified to opine on the business practices of national mutual fund organizations that manage hundreds of thousands of IRA applications every year. Mr. Balser's affidavit also confuses the standards for clarity and completeness that would apply to a traditional trust (where a beneficiary designation is essential) and the standards that apply to an IRA mutual fund account for which the beneficiary is the account owner, and for which a designation of

an additional beneficiary upon the death of the current beneficiary is not essential. To the extent Mr. Balser's affidavit attempts to offer expert opinions, the opinions would not assist the trier of fact in understanding the evidence in this case. See Fed.R.Evid. 702. The court grants the motion by defendants CGTC and AFSC to strike the Balser affidavit.[2]

### Conclusion

The undisputed facts show that the defendants did not owe any duty running in favor of plaintiff to question Dr. Ziss's intentions about the disposition of his assets after his death. Accordingly, all defendants are entitled to summary judgment. Final judgment will be entered immediately.

So ordered.

---

2. Defendants CGTC and AFSC have also moved to strike the affidavit of Amy Vidal. The court agrees that her affidavit is irrelevant and therefore grants the motion to strike that affidavit.