Clara McDANIEL, as Personal Representative of the Estate of Laura Catherine McDaniel, deceased, and

Clara McDaniel, individually, Appellant–Plaintiff,

v.

Catherine L. SHEPHERD and Randall Collins, Appellees–Defendants.

No. 22A04–9001–CV–38.

Court of Appeals of Indiana, Fourth District.

Aug. 27, 1991.

Michael F. Ward, Ward & Bolin, Albany, for appellant-plaintiff.

James E. Bourne, Susan K. Lemay, Wyatt, Tarrant, Combs & New Orbison, New Albany, for appellees-defendants.

CONOVER, Judge.

Plaintiff–Appellant Clara McDaniel appeals a judgment entered against her in favor of Defendants–Appellees Catherine L. Shepherd and Randall Collins in a negligence action for emotional distress.

We reverse.

We restate Clara's issues as:

1. whether the trial court erred in determining there was insufficient evidence to warrant the giving of Clara's

tendered instruction regarding constructive fraud,

2. whether the trial court erred in determining there was insufficient evidence to warrant the giving of Clara's tendered instructions regarding assumption of duty,

3. whether the trial court erred in determining the evidence was insufficient to warrant the giving of Clara's proposed instruction regarding mutuality of understanding of the release's content, and

4. whether the trial court erred by refusing to let Clara refer to certain portions of some witnesses depositions.[1]

Collins drove Shepherd's automobile through the wall of Clara's residence.[2] It struck both Clara and her daughter, Laura. While Clara suffered only minor injuries, her daughter was killed as Clara watched. Clara's medical bills amounted to $140. At trial, Collins' liability was stipulated.

A few days after Laura's funeral, John Apeinis, a United Farm Bureau insurance agent, contacted Clara regarding her possible claims against Collins.[3] When Apeinis talked to Clara, he did not record her statement because he saw she was "in shock". (R. 629). Apeinis told Clara not to get an attorney, because she would come out ahead if she didn't. He also offered to get her an attorney if she needed one. He further advised her that she could consult Farm Bureau's attorney for any legal advice she might need. (R. 685–687, 709).[4] Shortly thereafter, Apeinis, acting for Farm Bureau, paid Clara $1,000 in exchange for a release of liability for all Clara's "known and unknown" personal injuries. Later, Clara talked to an attorney who advised her she had a potential emotional distress claim. She then filed this action seeking damages for emotional distress.[5]

At trial, Collins raised Farm Bureau's release as a defense. Clara claimed she was not bound by the release because it had been obtained by either actual or constructive fraud. She further contended the release was never intended to prohibit her claim for emotional distress. She presented evidence concerning both fraud theories and whether there had been a "meeting of the minds" as to what the release meant, then tendered instructions on constructive fraud, assumption of duty, and the lack of a meeting of the minds at the trial's conclusion. The trial court refused Clara's tendered instructions on these points, believing the evidence thereon was insufficient to warrant their being given to the jury. The jury was left with only the factual question of whether the release had been obtained by actual fraud. It answered the question in the negative. Accordingly, Clara's emotional distress claim was denied. Clara appeals.

Additional facts are given below as necessary.

■ Clara first contends the trial court erred when it refused to give Proposed Instruction 6 on constructive fraud. We agree.

■ A party is entitled to an instruction on a proposition of law if there is evidence in the record, or an inference therefrom, to support the giving of such an instruction. *Mullins v. Bunch* (1981), Ind., 425 N.E.2d 164, 165; *Sullivan v. Fairmont Homes, Inc.* (1989), Ind.App., 543 N.E.2d 1130, 1137, *trans. denied.* It is reversible error for a trial court to refuse to give instructions covering essential elements of the case when such instructions are supported by some evidence, are consistent with the theory of the case, and there are no other instructions covering that area of law. *Burkett v. Crulo Trucking Co.* (1976), 171

1. Because we reverse, we will not address the trial court's ruling as it pertains to counsel's argument on this issue.

2. The defendants will be hereinafter referred to collectively as "Collins".

3. Farm Bureau was Collins' insurer.

4. Evidence of Apeinis' representations regarding counsel is disputed. The credibility of the witnesses is a question for a properly instructed jury.

5. Other issues were alleged in the complaint, but were settled before trial.

Ind.App. 166, 355 N.E.2d 253, 261–262. The proposed instructions must correctly state and cover law not discussed in the instructions actually given by the trial court. The sole question is whether Clara presented evidence sufficient to warrant the giving of her proposed instructions.

Constructive fraud is defined as fraud which arises by operation of law from a course of conduct which, if sanctioned by law, would "secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Paramo v. Edwards* (1990), Ind., 563 N.E.2d 595, 598 (citing *Marcum v. Richmond Auto Parts Co.* (1971), 149 Ind. App. 120, 270 N.E.2d 884, 887). An action or course of conduct is fraudulent if it tends to deceive others, to violate a public or private trust, or to injure public interests. *Sanders v. Townsend* (1987), Ind. App., 509 N.E.2d 860, 865, *reh. denied, trans. denied.*

The elements of constructive fraud are 1) the existence of a duty due to a relationship between the parties; 2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate cause thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party. *Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1197. We have recently emphasized concerning the first element that a confidential relationship between the parties is not essential to the finding of constructive fraud, as Indiana recognizes the concept of "fraud in law" or "legal fraud" wherein the key emphasis is the inherent likeliness of conduct to create an injustice. *Scott v. Bodor* (1991), Ind.App., 571 N.E.2d 313, 324. Conduct is likely to create an injustice when actions or statements mislead the complaining party, and the actions or statements are of a character which would prevent inquiry. *See, Paramo, supra,* at 599.

In the present case, three of the elements of constructive fraud require examination. Collins contends (a) Farm Bureau had no duty to insure that Clara was not misled in her negotiations with Apeinis, (b) Apeinis made no deceptive representations, and (c) Clara had no right to rely on Apeinis' representations.

The crux of Collins' argument is his apparent assumption that an insurer never has a duty to an injured party to insure the party is not misled. In Collins' opinion, an insurer's only duty is to abstain from intentional fraud. Collins cites *Martin v. Levinson* (1980), Ind.App., 409 N.E.2d 1239, and *Travelers Indemnity Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, in support of this argument. In *Martin,* we held an insurance agent has no duty to disclose information to an injured third party in negotiations leading to settlement and release of claims. 409 N.E.2d, at 1244. In *Travelers,* our supreme court held that after a dispute has risen, an insurance agent must act in good faith, but is not bound to be correct. 442 N.E.2d, at 364.

*Martin* is clearly distinguishable from this case. Unlike this case, the injured party in *Martin* was represented by an attorney. As our supreme court noted in *Paramo, supra,* our state courts are reluctant to find fault in the way insurance companies negotiate with injured parties because injured third parties are usually represented by attorneys. These attorneys will presumably insure that injured parties will not be misled. 563 N.E.2d, at 595. Here, the insurance company's agent advised an elderly, uneducated, and acutely disturbed woman not to hire an attorney. Thus, the *Paramo/Martin* safeguards against her being misled are absent.[6]

Furthermore, in light of our supreme court's discussion in *Paramo, Travelers* cannot be read as holding that a tort-feasor's insurance agent is never guilty of constructive fraud. The distinguishing factors present in *Travelers* were that (a)

---

6. *Martin* specifically holds that a party's conduct may place him in a position where he cannot later assert a defense. 409 N.E.2d, at 1242–1243.

the parties were involved in an obvious dispute, and (b) the injured party was at all critical times represented by an attorney. Here, Clara did not understand that the insurer's interest was not the same as hers. Because of Apeinis' advice, she had no counsel to tell her otherwise.

In the present case, there is substantial evidence indicating that although Apeinis did not know the exact diagnosis of Clara's mental condition at their initial meeting, he did observe she was suffering from severe mental distress. He also knew from the initial interview that after the accident Clara had almost no money for support, had to move in with relatives, and was threatened with the loss of her Social Security benefits if she did not move out into a place of her own. Nevertheless, Apeinis voluntarily (a) advised Clara not to hire an attorney, (b) indicated his company would provide any legal advice needed, thereby assuring her she would not be misled, and (c) soon thereafter gave her an incomplete explanation of the content of the release. This evidence is sufficient to create a fact question for the jury regarding the legal effect of the parties' course of conduct with reference to the first element of constructive fraud. The important factor in this case is not the existence of a confidential relationship but whether the confluence of conduct by the Collins' insurer with reasonable reliance and detriment by Clara resulted in an advantage which the law cannot condone.

Collins further argues Clara was not misled since Apeinis made no deceptive representations. He opines that Apeinis fully informed Clara regarding the extent of the release. Collins, citing *New York, Chicago and St. Louis Railroad Co. v. Henderson* (1957), 237 Ind. 456, 146 N.E.2d 531, 542, *reh. denied,* argues that emotional distress injuries are an element of the more general category of "personal injury". Therefore, Collins argues Clara should have known she was waiving future claims for emotional distress damages.

Collins ignores the evidence indicating Apeinis misrepresented to Clara that she didn't need an attorney because his company would help her with legal matters. The evidence indicates Apeinis clearly neglected to inform Clara that Farm Bureau was actually her adversary and was more interested in a quick and inexpensive settlement than her particular needs. Given her observable condition, it is certainly possible, even certain, that the jury would find this misrepresentation was key to Clara's subsequent signing of a release to her detriment and Farm Bureau's benefit.

As a result of Apeinis' initial misrepresentation, Clara relied on Apeinis' unintentional misrepresentation regarding the scope of the release agreement. He did not contemplate a release of personal injury claims would constitute anything other than a waiver of future physical injury claims. Certainly, if Apeinis, as an agent with sixteen years of experience, did not know the waiver would apply to future emotional distress claims, Clara should not be found to have had this specialized knowledge.[7]

Collins also argues Apeinis' statement that Clara did not need an attorney was merely an expression of opinion upon which Clara had no right to rely. He cites *American Underwriters v. Rich* (1944), 222 Ind. 384, 53 N.E.2d 775, 778, in support of its argument.

In *American Underwriters*, the sole theory of recovery was actual fraud. Accordingly, in order to avoid the release, Rich was required to show the statements made by the insurer were knowingly false. The court held the statements, which included the insurer's statement that the injured party needed no attorney, were mere opinions because they were not knowingly false. The court did not address the question of whether the injured party could have reasonably relied on the insurer's statements under the theory of constructive fraud. Accordingly, *American Underwriters* is inapplicable to this case.

---

7. *Henderson* is directed to the preservation of an injured party's claim and should not be read to extend the scope of a release beyond that contemplated by the parties. Collins errs in his interpretation of the case.

Clara presented evidence, in the form of testimony by a clinical psychologist, that the horror of witnessing her daughter's death resulted in an acute post-traumatic stress disorder and depression which caused her to be disoriented, inattentive, and extremely dependent for a period of two to three months after the accident. The psychologist also observed that Clara had very little formal education and had difficulty remembering things. The evidence of the acuteness of her mental condition, coupled with her poor memory and lack of formal education, is sufficient to allow the jury to find Clara's reliance upon Apeinis' misrepresentations was reasonable.

■ The jury, if properly instructed, could have found that Farm Bureau, through Apeinis, misled Clara into not hiring an attorney, negligently gave her less than full information regarding the release, convinced her to sign the release to her detriment and Collins' and Farm Bureau's benefit, and then used the release to avoid payment for further injuries on the basis it was an attorney's job to give her legal advice, not Farm Bureau's. This evidence is sufficient to allow a properly instructed jury to find constructive fraud on the basis Apeinis' conduct, as agent for Farm Bureau, was inherently likely to create an injustice.[8]

■ Clara also contends the trial court erred in not giving Proposed Instructions 9 and 11, based on *Clyde E. Williams & Associates, Inc. v. Boatman* (1978), 176 Ind.App. 430, 375 N.E.2d 1138, and Proposed Instruction 10, based on *Thompson v. Best* (1985), Ind.App., 478 N.E.2d 79, and *Indiana Bank & Trust Co. v. Perry* (1984), Ind.App., 467 N.E.2d 428. Instructions 9 and 11 deal generally with the assumption of duty, while instruction 10 deals with full disclosure by one who gratuitously undertakes to disclose material facts.

Collins argues the question of whether an insurer owes a duty to an injured party is a purely legal question to be decided by the court. He cites *United Farm Bureau Mutual Insurance Co. v. Cook* (1984), Ind. App., 463 N.E.2d 522, in support of his argument.

*Cook* involved the question of whether the trial court properly gave Cook's instruction to the effect that an insurance agent had a duty to the insured to act carefully in handling the insured's insurance needs. We held that the existence of a long-standing relationship between the parties, as well as the agent's admission to the special relationship, lead to the conclusion that, as a matter of law, Farm Bureau's agent owed Cook a duty to exercise reasonable care. Therefore, we concluded the trial court did not err in giving the instruction.

In *Williams, supra*, we held the assumption of a duty may be a mixed question of law and fact. In *Medtech Corp. v. Indiana Insurance Co.* (1990), Ind.App., 555 N.E.2d 844, 849, we held the specific question of whether an insurer assumes a duty to a third party may be a question of fact for the jury. *Cook* should not be read to conflict with these cases. The case merely recognizes that in specific situations the existence of a duty is so clear as to not require any factual finding.

In the present case, Apeinis' representations to Clara regarding the need for, and provision of, legal assistance is sufficient to create a factual question for the jury concerning assumption of duty. The jury could find that Apeinis accepted the responsibility to insure Clara was not misled.

■ Finally, Clara contends the trial court erred in not giving her proposed instruction stating that an agreement does not have a binding effect upon a particular element if there has been no meeting of the minds on that element.

In *Rauch v. Shots* (1989), Ind.App., 533 N.E.2d 193, *reh. denied, trans. denied*, the case from which the disputed instruction is taken, the injured party sustained property damage and personal injuries in an acci-

---

8. If Clara prevails at trial on the issue of constructive fraud, then Collins will be estopped from utilizing the release as a defense. Fraud, either constructive or actual, is the basis for equitable estoppel. *Paramo, supra*, at 598.

dent. After a period of negotiation in which only the property damage claim was discussed, the insurer sent the injured party a check which included a notation on the front stating "any and all claims arising from accident of 2–11–85." The back of the check indicated "by endorsement hereon payee acknowledges and agrees to the amounts, purposes and terms stated on the face hereof." *Id.* When Rauch later sought payment for personal injuries, the insurer argued accord and satisfaction. The trial court agreed, and granted summary judgment for the insurer. We reversed, holding there was an issue of material fact as to whether the parties intended the check to constitute an accord and satisfaction. In so doing, we stated that "the issue of accord and satisfaction is ordinarily a question of fact and becomes one of law only if the requisite controlling facts are undisputed and clear." 533 N.E.2d at 194. We relied on *State Farm Fire & Casualty Co. v. Fordham* (1978), 148 Ga. App. 48, 250 S.E.2d 843, in arriving at the conclusion that "to be binding, there must be a meeting of minds as to the subject matter embraced in the agreement." 533 N.E.2d, at 195.

In the present case, Apeinis explained the release covered Clara's personal injuries, and not any property or death claims. Both Apeinis and Clara testified they did not have emotional injury claims in mind when they discussed the release. Accordingly, there was no meeting of the minds on the subject of the release of emotional distress claims. This is evidenced by Apeinis' notation on the check that it covered "bodily injuries", a term which would not commonly be understood to include psychic injuries. This evidence would support the jury's finding that Clara and Apeinis intended the release to cover only damages to the physical body. The trial court erred in not instructing the jury as requested.[9]

Reversed.[10]

MILLER and BARTEAU, JJ., concur.

**9.** Collins argues that psychic injuries are part of the general categories of "personal injury" or "bodily injury". However, the testimony of the parties, as well as the commonly understood interpretation of these categories, would indicate that neither Clara nor Apeinis intended the release to prevent future psychic injury claims.

**10.** Collins expresses concern that a holding in favor of Clara effectively prevents an insurer from negotiating with an injured party not represented by an attorney. Collins also is concerned that a holding in favor of Clara forces an insurer to tailor its advice to an injured party to fit that party's subjective beliefs.

The results feared by Collins are neither the intent nor the effect of our holding here. Our holding is limited to the situation where an insurer induces an observably mentally disadvantaged person to rely on the insurer for legal advice, negligently represents the content of a legal document, and then relies on the document to the injured party's detriment and the insurer's gain. The questions raised by Collins' concerns are reserved for another day.