MIDWEST SECURITY LIFE
INSURANCE COMPANY,
Appellant–Defendant,

v.

Theresa A. STROUP and Patrick J.
Stroup, Appellees–Plaintiffs.

No. 06A05–9804–CV–201.

Court of Appeals of Indiana.

Feb. 17, 1999.

Alan J. Irvin, Dale & Eke, Indianapolis, Indiana, Attorney for Appellant.

Mary J. Hoeller, Dutton & Overman, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Midwest Security Life Insurance Company (Midwest), brings an interlocutory appeal of the trial court's denial of its motion for summary judgment as to the claim of Appellees, Theresa A. Stroup (Theresa) and Patrick J. Stroup (collectively the Stroups).

We reverse.

1. 29 U.S.C. § 1001 *et seq.* (1999).

On appeal, Midwest presents the following issues:

(1) Whether the Stroups' common law claims against Midwest for breach of an insurance contract and the tort of bad faith are preempted by the Employee Retirement Income Security Act (ERISA);[1] and

(2) Whether the Stroups are entitled to a trial by jury upon their claims.

Midwest issued a group health insurance policy (the Plan) to Patrick Stroup's employer, Ivy Homes, Inc. The Stroups were beneficiaries under the Plan, which was governed by ERISA. Midwest served as administrator of the Plan.

In January of 1993, Theresa sought and received preapproval of benefits from Midwest for surgery to correct mandibular laterognathia. Midwest informed Theresa, through the dental surgeon, that coverage for her surgery was subject to insurance in effect at the time of the procedure and that all benefits were subject to policy provisions which could change. Furthermore, Midwest advised that the Plan provided "no guarantee of benefits." Record at 56.

To prepare for surgery, Theresa wore orthodontic appliances for approximately one year following her preapproval. On January 17, 1994, Theresa's dental surgeon requested preapproval of benefits for surgery to correct a musculoskeletal deformity of the maxilla and mandible. The letter noted that surgery had already been approved as medically necessary but "recent surgical-orthodontic evaluation revealed the above mentioned maxillary deformities." Record at 57. Following requests for additional information, Midwest approved coverage for the proposed surgery. In so doing, Midwest advised that, "[a]ll benefits are subject to ... plan provisions at the time of the service." Record at 60.

Theresa underwent surgery on April 13, 1994. During the procedure, an artery in Theresa's right jaw was inadvertently severed. Because of the severed artery, she lost two units of blood, "a greater than average amount of blood loss," and thereafter suffered pain related to the flooding of blood into her right temporomandibular joint.

Record at 310. On January 24, 1995, Theresa's dental surgeon requested preapproval from Midwest for surgery to correct "a significant internal derangement involving the left temporomandibular joint." Record at 61. Two days later, on January 26, 1995, Midwest responded that the maximum benefit available to Theresa for surgical treatment of Temporomandibular Joint Disorder (TMJ) was $1,000. On August 1, 1994, Midwest had amended the Plan to exclude coverage for charges for orthognathic surgery. Thus, Midwest refused to provide coverage for the entire surgical procedure. Theresa ultimately underwent emergency bone graft surgery in October of 1995 and further corrective surgery in January of 1996. The Stroups incurred total medical expenses in excess of $50,000, although they do not know what portion of those expenses Midwest has actually covered.

On June 26, 1995, the Stroups filed their Complaint for Injunctive Relief and Damages against Midwest. Midwest filed its Answer on May 31, 1996. With leave of court, on July 23, 1997, the Stroups filed an Amended Complaint for Damages. In their Amended Complaint, the Stroups charged Midwest with breach of the insurance contract and with the tort of bad faith. They also requested a jury trial. Midwest answered the Amended Complaint on August 18, 1997, asserting as an affirmative defense that the Stroups' claims were preempted by ERISA. Midwest filed for summary judgment on January 2, 1998, again alleging that the Stroups' claims were preempted by ERISA. Midwest also filed a Motion to Strike Plaintiff's Jury Demand.

Following a hearing, the trial court on March 4, 1998, made the following findings in its order denying Midwest's summary judgment motion.

"1. Pursuant to Trial Rule 56 the Court finds that there are genuine issues of material fact which would preclude the entry of Summary Judgment.

2. The Court specifically finds as a matter of law that the Plaintiffs' state law claims for breach of contract and bad faith are not preempted by the Employee Retirement Income Security Act (ERISA).

3. Logically, therefore, Plaintiffs' claims for punitive damages are also not preempted by ERISA.

4. The Court, having determined that this cause of action arises under state law, and is not preempted by ERISA, the Court, therefore, concluded that Defendant's Motion to Strike Plaintiffs' Request for Jury should as well be denied. The Court finds that this matter is triable to a jury." Record at 407–08.

Subsequently, on March 16, 1998, the trial court granted Midwest's Petition to Certify Order for Interlocutory Appeal and Request for Stay.

▆▆▆ Upon review of the grant or denial of a summary judgment motion, we apply the same legal standard as the trial court: summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Primerica Life Ins. Co. v. Skinner* (1997) Ind.App., 678 N.E.2d 1140, 1142; *General Casualty of Wis. v. Diversified Painting Service, Inc.* (1992) Ind.App., 603 N.E.2d 1389, 1390. The party appealing the trial court's grant or denial of summary judgment has the burden of persuading this court that the trial court's decision was erroneous. *Primerica Life, supra* at 1142.

▆▆▆ The material facts in the instant case are not in dispute. The chief conflict concerns the proper application of the law to the facts. Enacted in 1974, ERISA "establishes a detailed federal framework for the regulation of pension and welfare benefit plans." *Bennett v. Indiana Life and Health Ins. Guar.* (1997) Ind.App., 688 N.E.2d 171, 179, *trans. denied.* The stated purpose of ERISA is to "protect ... the interests of participants in employee benefit plans and their beneficiaries ... by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." [2] 29 U.S.C. § 1001(b)

---

2. ERISA defines an "employee benefit plan" as      an "employee welfare benefit plan or an employ-

(1999). A beneficiary or plan participant may enforce his rights under ERISA by bringing a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* at § 1132(a)(1)(B). State and federal district courts have concurrent jurisdiction over actions brought by a beneficiary or participant to recover benefits and to enforce or clarify rights under the plan. *Id.* at § 1132(e)(1); *Associates Inv. Co. v. Claeys* (1989) Ind.App., 533 N.E.2d 1248, 1251 ("ERISA specifically and unequivocally designates state courts as a proper forum for civil actions to recover benefits due under the terms of an employee benefit plan."), *trans. denied.*

ERISA was designed to create uniformity in the laws governing employee benefit plans. *Bennett, supra,* 688 N.E.2d at 179; *Edwards v. Bethlehem Steel Corp.* (1990) Ind.App., 554 N.E.2d 833, 835–36 ("ERISA was created to treat employee benefits uniformly; the main goal was to protect the employee from losing anticipated benefits."), *trans. denied.* Congress gave ERISA broad preemptive authority over state law. 29 U.S.C. § 1144(a) states, "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." [3] However, the scope of ERISA's preemptive power is limited by 29 U.S.C. § 1144(b)(2)(A), the "savings clause," which provides, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." *See Westhoven v. Lincoln Foodservice Products, Inc.* (1993) Ind.App., 616 N.E.2d 778, 781 ("ERISA permits certain independent, albeit potentially inconsistent or contradictory, state action in specified areas of local interest and concern."), *reh'g denied.*

Midwest contends that the Stroups would have no lawsuit but for the existence of the Plan, that the state law claims require proof of an insurance policy governed by ERISA, and that the claims for breach of contract and bad faith "relate to" the Plan. Therefore, argues Midwest, the Stroups' claims are preempted by ERISA. We agree that the Stroups' claims for breach of contract and bad faith are, in fact, preempted. In so concluding, we look to federal law for guidance. Decisions by the United States Supreme Court regarding ERISA preemption are binding upon state courts, while the decisions of lower federal courts serve merely as persuasive authority. *Indiana Dep't of Public Welfare v. Payne* (1993) Ind., 622 N.E.2d 461, 468.

The United States Supreme Court has noted that ERISA's preemption provisions are "deliberately expansive." *Pilot Life Ins. Co. v. Dedeaux* (1987) 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39. Under ERISA, state claims are preempted if they "relate to" an employee benefit plan. A law "relates to" a covered employee benefit plan if it has: (1) a connection with or (2) a reference to such plan. *California Div. of Labor Standards Enforcement v. Dillingham Constr.* (1997) 519 U.S. 316, 324, 117 S.Ct. 832, 837, 136 L.Ed.2d 791, (quoting *District of Columbia v. Greater Washington Bd. of Trade* (1992) 506 U.S. 125, 129, 113 S.Ct. 580, 583, 121 L.Ed.2d 513). Further, a state law claim will be found to "relate to" an employee benefit plan if the existence of the benefit plan is a critical factor in establishing liability. *Ingersoll–Rand Co. v. McClendon* (1990) 498 U.S. 133, 139–40, 111 S.Ct. 478, 483, 112 L.Ed.2d 474. In *Ingersoll–Rand Co. v. McClendon* (1990) 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474, a terminated employee sued his former employer in state court,

---

ee pension benefit plan." 29 U.S.C. § 1002(3). An "employee welfare benefit plan," in turn, is defined as "any plan, fund, or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits...." *Id.* at § 1002(1). Applying these definitions, the Plan qualified as both an "employee welfare benefit plan" and an "employee benefit plan."

3. The term "State law," as defined by ERISA, "includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1) (1999).

alleging under various contract and tort theories that he was discharged because the company sought to avoid making contributions to his pension fund. The Supreme Court observed:

> "The Texas [state law] cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan.... Thus, in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists and the employer had a pension-defeating motive in terminating the employment. Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan." *Id.* at 140, 111 S.Ct. 478.

Likewise, in the instant case, the Stroups must necessarily plead and the court must find that the Plan, governed by ERISA, existed and that Midwest, in bad faith, breached the Plan's terms in denying Theresa coverage. Their Amended Complaint specifically refers to the Plan, asserting that, "[a]t all times material herein, [Midwest] issued a policy of health and accident insurance to the Stroups." Record at 9. The Stroups further charge that, "[t]he policy of insurance does not exclude coverage for the type of surgery requested to be preauthorized by the Stroups, and denied for coverage by [Midwest] which has breached its contract with Plaintiffs.... The denial of coverage is a breach of the contract and constitutes the tort of bad faith...." *Id.* at 10. Without the existence of the Plan, the Stroups would have no claim as asserted. Their claims specifically refer to the Plan and depend upon the very existence of the Plan. There is no question that each of the Stroups' claims "relates to" an employee benefit plan. Therefore, the Stroups' state law claims for breach of contract and bad faith are preempted by ERISA.

The Stroups alternatively contend that ERISA's "savings clause" protects its bad faith claim from preemption, because the tort of bad faith "regulates insurance." Appellees' Brief at 22. According to the Stroups, we "should not find preemption given the clear policy in Indiana to protect its insureds from bad faith decisions of their insurers." Appellees' Brief at 22. The Indiana Supreme Court, in *Erie Insurance Company v. Hickman* (1993) Ind., 622 N.E.2d 515, 519, held that, "it is in society's interest that there be fair play between insurer and insured.... [We] conclude that recognition of a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith is appropriate." While not delineating the precise extent of the insurer's duty, the court noted that the duty of good faith and fair dealing by the insurer included an obligation to refrain from "making an unfounded refusal to pay policy proceeds." *Id.* at 519. Applying this tort theory, a party may recover, "all damages directly traceable to the wrong and arising without an intervening agency." *Id.* However, "in most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action." *Id.* A party can recover punitive damages as well. *Id.*

■ Indiana's tort of bad faith is not a law which "regulates insurance," and, therefore, the cause of action is not safeguarded from preemption under ERISA's "savings clause," 29 U.S.C. § 1144(b)(2)(A). In *Pilot Life, supra,* the United States Supreme Court applied a two part analysis for determining whether a state law fell within the savings clause. First, the Court considered the "common-sense view" of the language of the savings clause. 481 U.S. at 50, 107 S.Ct. 1549. Second, the Court applied case law interpreting the phrase "business of insurance" under the McCarran–Ferguson Act, 15 U.S.C. § 1011 *et seq. Id.* at 48, 50–51, 107 S.Ct. 1549. Specifically, the following three criteria were used to interpret the phrase "business of insurance": (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. *Id.* at 48–49, 107 S.Ct. 1549.

*Pilot Life* involved a claim under Mississippi law for the tortious breach of an insurance contract. The Supreme Court examined

whether Mississippi's "bad faith" cause of action, which allowed recovery for punitive damages, constituted a law which "regulates insurance." The Court first determined that a common-sense understanding of the phrase "regulates" meant that "a law must not just have an impact on the insurance industry, but [it] must be specifically directed toward that industry." *Pilot Life, supra*, 481 U.S. at 50, 107 S.Ct. 1549. Even though the Mississippi Supreme Court identified the law of bad faith with the insurance industry, the Court noted that "the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." *Id.* Mississippi's tort of bad faith was not specifically directed toward the insurance industry, and, therefore, it did not fall within ERISA's savings clause.

Next, the Court held that application of the McCarran–Ferguson criteria did not support the assertion that Mississippi's law of bad faith "regulates insurance." *Pilot Life, supra*, 481 U.S. at 50, 107 S.Ct. 1549. The cause of action did not effect a spreading of the policyholder's risk. Further, the Supreme Court noted that Mississippi's state common law of bad faith involved a connection to the insurer-insured relationship that was "attenuated at best." *Id.* at 51, 107 S.Ct. 1549. Moreover, the tort of bad faith did not define the terms of the relationship between the insurer and the insured. It merely allowed the policyholder, under certain circumstances, to obtain punitive damages upon breach of a contract. It was therefore not an "integral" part of the policy relationship. Finally, the court again observed that Mississippi's law of bad faith developed from general principles of contract and tort law, even if the cause of action was identified with the insurance industry. The Supreme Court also observed that, "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argues strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.* at 54, 107 S.Ct. 1549. Upon consideration of "the common-sense under-

standing of the saving clause, the McCarran–Ferguson Act factors defining the business of insurance, and, most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive," the Supreme Court held that the plaintiff's state law claim for the bad faith breach of an insurance claim was preempted by ERISA. *Id.* at 57, 107 S.Ct. 1549.

We first apply the United States Supreme Court's "common-sense" analysis. In *Erie Insurance Company v. Hickman, supra*, our Supreme Court noted that Indiana law has long recognized a legal duty implied in all insurance contracts that the insurer deal with its insured in good faith. *Erie Ins. Co.*, 622 N.E.2d at 518. It then concluded, "[w]hether breach of this duty constitutes a tort involves a judicial balancing of three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns." *Id.* (citing *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, 995, *reh'g denied*). Upon weighing these general factors used in determining a legal duty, the *Erie Ins. Co.* court held that Indiana law recognizes a claim for bad faith breach of an insurance contract. *Id.* Furthermore, as with other tort claims, punitive damages are permitted, though not mandated, for successfully prosecuting a bad faith cause of action. *See USA Life One Ins. Co. of Ind. v. Nuckolls* (1997) Ind., 682 N.E.2d 534, 541 (observing that "proof that a tort was committed [along with breach of contract] does not necessarily establish the right to punitive damages").

The Indiana Supreme Court thus relied upon general tort theory in recognizing a cause of action for the breach of an insurer's duty to deal with its insured in good faith. Moreover, the tort of bad faith, as with other tortious acts, may result in punitive damages.[4] These facts support our conclusion that, as in *Pilot Life*, where the Supreme Court found Mississippi's tort of bad faith to be rooted in that state's tort and contract legal principles, Indiana's bad faith cause of action is firmly rooted in the general princi-

---

**4.** The *Erie Ins. Co.* court, however, determined that the evidence was insufficient to justify a

punitive damage award.

ples of our state's tort and contract law. This is true even though the Indiana Supreme Court has identified the tort with the insurance industry. Thus, the tort of bad faith in Indiana is not specifically directed toward the insurance industry. Under the United States Supreme Court's common-sense approach, Indiana's tort of bad faith is not a law which regulates insurance.

We next apply the McCarran–Ferguson factors. First, Indiana's bad faith cause of action does not effect a spreading of the policyholder's risk. Second, the tort of bad faith does not serve as an integral part of the policy relationship between the insurer and the insured. Rather, it merely provides a cause of action to an insured who believes that he or she has been wronged by an insurer. Third, while not "specifically directed" at the insurance industry under the common-sense approach, the tort of bad faith may be more readily applicable to entities within the insurance industry. *See Erie Ins. Co., supra,* 622 N.E.2d at 518 (noting that it is the "unique character" of an insurance contract which creates a "special relationship" supporting imposition of a tort duty upon the insurer).[5] However, meeting just one of the three McCarran–Ferguson factors is not sufficient to save Indiana's tort of bad faith from ERISA preemption. *See Pilot Life, supra,* 481 U.S. at 51, 107 S.Ct. 1549. We conclude that Indiana's cause of action for bad faith is not a state law "regulating insurance."

Because their state law claims for breach of contract and the tort of bad faith are preempted by ERISA, the Stroups do not have a valid cause of action upon which to base their request for a jury trial. Their second issue is, therefore, moot.

However, even had they asserted ERISA claims against Midwest, triable in the State court, the Stroups still would not have been entitled to a jury trial. The Indiana Constitution provides, "In all civil cases, the right of trial by jury shall remain inviolate." IND. CONST. art. 1, § 20. However, the phrase "all civil cases" refers only to those civil cases which were triable by jury at common law. *Broadhurst v. Moenning* (1994) Ind.App., 633 N.E.2d 326, 330. ERISA did not exist at common law. Its provisions are a creature of federal statute. Therefore, the Stroups would have had no right to a jury trial to determine Theresa's benefits under the Plan. *See, e.g., Reynolds v. State* (1998) Ind.App., 698 N.E.2d 390, 394 (Motorist was not entitled at common law to a jury trial in petition to review his license suspension under Indiana's Implied Consent Law, where the action arose "from a relatively recent statutory scheme which is quasi-administrative in nature."), *trans. denied; E.P. v. Marion County Office of Family and Children* (1995) Ind.App., 653 N.E.2d 1026, 1030 ("Because no special judicial system for juvenile matters existed at common law, juvenile matters obviously were not triable by jury. Thus, we have consistently held that Art. I, § 20 does not give a party a right to a jury in juvenile court proceedings."); *Owens v. State ex rel. VanNatta* (1978) 178 Ind.App. 406, 382 N.E.2d 1312, 1314 (Revocation of party's driver's license pursuant to the Habitual Traffic Offenders Act was "not the type of criminal or civil proceeding for which a jury trial was provided at common law. Therefore, trial by jury [was] not required."), *trans. denied.*

Because the Stroups' common law claims were preempted by ERISA, we find that the trial court erred in denying summary judgment to Midwest.[6] We further conclude that

---

**5.** We note, without deciding, that there may be other contractual relationships giving rise to a duty of good faith dealing.

**6.** Counsel for Appellees contends that, "[i]f this Court finds these claims [for breach of contract and bad faith] are preempted, then the Stroups' claim[s] will amount to virtually nothing." Appellees' Brief at 13. The Stroups admit, however, that they are eligible to bring a claim under 29 U.S.C. § 1132(a)(1)(B). While this may not be the type relief they prefer, it is the type relief

which Congress has provided. As the United States Supreme Court has noted, "[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Pilot Life, supra,* 481 U.S. at 54, 107 S.Ct. 1549. To the extent that the Stroups challenge the efficacy, wisdom and policy considerations of ERISA, such arguments are best addressed to Congress.

the trial court erred in denying Midwest's motion to strike the Stroups' request for a jury trial. Therefore, we reverse the order of the court and remand with instructions to enter summary judgment for Midwest.

SHARPNACK, C.J., and HOFFMAN, Sr.J., concur.