**Richard L. DARST, United States Bankruptcy Trustee, In re Bert Sloan and Lavonna Sloan, Appellant–Plaintiff,**

v.

**ILLINOIS FARMERS INSURANCE COMPANY, Appellee–Defendant.**

No. 49A02–9809–CV–775.

Court of Appeals of Indiana.

Sept. 27, 1999.

Robert W. Strohmeyer, Jr., Mitchell Hurst Jacobs & Dick, Indianapolis, Indiana, Attorney for Appellant.

Laura S. Reed, Riley Bennett & Egloff, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

SULLIVAN, Judge

Appellant, Richard L. Darst, United States Bankruptcy Trustee (Trustee), appeals the trial court's grant of summary judgment in favor of Illinois Farmers Insurance Company (Illinois Farmers) upon Bert and Lavonna Sloans' claims for fraud and breach of an assumed duty to provide accurate information.[1]

We affirm.

On April 4, 1996, Bert Sloan (Sloan) was involved in an automobile accident when his van was rear-ended by another vehicle driven by Glen Weger (Weger). Sloan was insured through Illinois Farmers Insurance Company (Illinois Farmers), and Weger was insured through Sagamore Insurance Company (Sagamore). After the accident, Sloan had several conversations with Todd Kelly (Kelly), an insurance adjuster for Sagamore, regarding the damage to his van as well as his personal injuries. On April 10, 1996, during a tele-

---

1. After filing their Complaint for Damages, the Sloans filed for bankruptcy and were replaced as plaintiffs in the action by Richard Darst, United States Bankruptcy Trustee.

phone conversation between Kelly and Sloan, Kelly asked Sloan what he thought would be a fair settlement offer for his personal injuries. Sloan replied that $15,-000 would "take care of [him] and anything that would pop up later on." Record at 24. Kelly told Sloan that $4,000 was the best settlement offer that he could give Sloan. Sloan stated that he would discuss the offer with his wife and call Kelly back. Lavonna Sloan, Bert Sloan's wife, advised Bert to call an attorney. Instead of calling an attorney, Sloan testified that he "called [Illinois Farmers] to ask them their advice, and they said it wouldn't do [him] any good." Record at 27. Specifically, Sloan claims that he spoke with Brent Gaumer (Gaumer) of Illinois Farmers who told him, "you can call an attorney if you want to, but you're not going to get any more money in your pocket. It's only going to go in the attorney's pocket. It's up to you." Record at 31. Further, during his deposition, Sloan was asked "[d]id [Gaumer] represent to you that, in his opinion, he thought [$4,000] was fair—a fair settlement?" Record at 31. In response, Sloan answered, "[y]es. That's what he said." Record at 31. Thereafter, without contacting an attorney, Sloan accepted Sagamore's offer and signed a form releasing Sagamore from further liability for Sloan's personal injuries.

On appeal, Trustee contends that the trial court erroneously granted summary judgment in favor of Illinois Farmers on the claims for actual and constructive fraud,[2] negligent misrepresentation, and breach of an assumed duty to provide Sloan with accurate information. We review a trial court's grant of summary judgment using the same standard as the trial court. *Gable v. Curtis* (1996) Ind.App., 673 N.E.2d 805 (citations omitted). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to

judgment as a matter of law. *Id.* "A trial court's grant of summary judgment is 'clothed with a presumption of validity,' and the appellant bears the burden of demonstrating that the trial court erred." *Id.* at 809 (citing *Rosi v. Business Furniture Corp.* (1993) Ind., 615 N.E.2d 431, 434).

### Actual and Constructive Fraud

The elements of actual fraud are

1. a material misrepresentation of past or existing fact by the party to be charged which

2. was false,

3. was made with knowledge or in reckless ignorance of the falsity,

4. was relied upon by the complaining party, and

5. proximately caused the complaining party injury.

The elements of constructive fraud are

1. a duty owing by the party to be charged to the complaining party due to their relationship,

2. violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists,

3. reliance thereon by the complaining party,

4. injury to the complaining party as a proximate result thereof, and

5. the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Pugh's IGA, Inc. v. Super Food Services, Inc.* (1988) Ind.App., 531 N.E.2d 1194, 1197 (citations omitted), *trans. denied.* Each tort requires the misrepresentation of fact; "[e]xpressions of opinion are not actionable and the court should refuse to

---

**2.** Illinois Farmers contends that the Sloans failed to allege both actual fraud and constructive fraud in their complaint. However, we decline to determine whether the com-

plaint adequately states a claim for relief for fraud in light of our disposition upon the issue of misrepresentation.

submit such statements to the jury." *Id.* at 1198 (citations omitted). Further, in order to establish either tort, the complaining party must have had a reasonable right to rely upon the statements made or omitted. *Id.* We conclude that Gaumer's statements to Sloan constituted expressions of opinion rather than fact and that Sloan had no reasonable right to rely upon them. Thus, the entry of summary judgment in favor of Illinois Farmers regarding the fraud allegations was appropriate.

The cases cited by Trustee are easily distinguished. For instance, in *Vernon Fire and Cas. Ins. Co. v. Thatcher* (1972) 152 Ind.App. 692, 285 N.E.2d 660, *trans. denied,* two agents from the plaintiff's insurance company represented to the plaintiff on numerous occasions that certain items of personal property would be included within the insurance policy, which items were not in fact covered by the insurance policy. Additionally, the insurance company actually did pay a smaller claim regarding the property at issue prior to the fire that was the basis for the claim being litigated. The statements made in *Vernon* were factual ones which were made with regard to the coverage of certain items of personal property under the insurance policy and "which would have been known to the Company's agent and field representative before either made any statement concerning it." *Id.* at 669. The court further explained that, "[i]f they were subjectively stating mere opinions they were reckless in stating them as facts without first having ascertained their truth." *Id.* at 670.

A person reasonably expects that his insurance agent will be aware of what is covered under the insurance policy and that if the agent is unaware, such information can be easily obtained by the agent through examination of the policy. Thus, if an agent represents that an item is covered, a party may reasonably rely upon that representation. However, in this case, the advice given by Gaumer was not information which could have been ascertained easily by Gaumer. Sloan did not call to obtain factual information regarding his policy or coverage, but, rather, he testified that he called to obtain advice about the fairness of the settlement offer, meaning he called to get an opinion. The basis upon which a settlement may be determined to be fair is not written into any insurance policy. Rather, unless a person has expertise which allows him to measure the amount of a settlement against settlements commonly given in such circumstances, he can do no more than offer a subjective opinion with regard to whether a settlement is fair or not. As Sloan acknowledged in his deposition, he recognized Gaumer as a claims adjuster, who "takes care of automobiles." Record at 30. Clearly then, Sloan had no reasonable right to rely upon Gaumer's subjective opinion as a representation of fact. That the opinion he solicited and chose to follow may have been ill-advised is not actionable.[3]

Trustee also cites to *McDaniel v. Shepherd* (1991) Ind.App., 577 N.E.2d 239, 242, wherein an insurance agent "advised an elderly, uneducated, and acutely disturbed woman [that she should not] hire an attorney" in pursuing her claim, that she would get ahead if she did not contact an attorney, and that the attorneys for the insurance company would give her any legal assistance she required. The agent failed to point out that the woman and the insurance company did not share the same interest with regard to the matter of inquiry. Further, in that case, the agent failed to

---

**3.** For the same reasons that we find *Vernon* distinguishable, we also find *Medtech Corp. v. Ind. Ins. Co.* (1990) Ind.App., 555 N.E.2d 844, *trans. denied,* distinguishable. In that case, a long-time ex-employee of an insurance company misrepresented the insurance company's claim procedures and endeavored to make a

claim on behalf of the plaintiffs. However, those statements concerning the plaintiff's insurance policy were of a factual nature and provided information with which he should have been or was familiar and about which he spoke with an air of knowledge. *Id.* at 848.

fully explain the ramifications of signing a release agreement. In *McDaniel*, the plaintiff was told not to get an attorney, while here Gaumer advised Sloan that any extra money he received as a result of consulting an attorney would merely go into the attorney's pocket. However, Gaumer did maintain that it was up to Sloan to make the decision. Additionally, he did not attempt to further persuade Sloan not to hire an attorney by stating that the attorneys at Illinois Farmers would provide Sloan with legal assistance if he needed it. Further, the *McDaniel* court limited its holding to "the situation where an insurer induces an observably mentally disadvantaged person to rely on the insurer for legal advice, negligently represents the content of a legal document, and then relies on the document to the injured party's detriment and the insurer's gain." *Id.* at 245 n. 10. In this case, there is no evidence in the record suggesting that Gaumer made representations regarding the release agreement that Sloan signed for Sagamore. The record demonstrates that Sloan had a full understanding of the ramifications of signing the release agreement. Moreover, there is no evidence which indicates that Sloan was mentally disadvantaged at the time nor that Gaumer was attempting to induce Sloan to rely upon Illinois Farmers for legal advice. Thus, we conclude that the reasoning of *McDaniel* is inapplicable to this case.

Further, in all three cases cited by Trustee, the misrepresentations were made regarding issues related to the essence of the relationship between the parties, i.e. misrepresentations regarding the coverage of or collection upon the policies that the plaintiffs in those cases had with the defendant companies. Thus, the plaintiffs in those cases had a reasonable right to rely upon the agents' representations. However, here, the advice sought was not related to the essence of the relationship between the two parties. It was not a fact related to the policy which Sloan maintained with Illinois Farmers, about which Gaumer should be expected to know. Rather, it was a request for the agent's advice as a matter outside the limited scope of their relationship. Thus, Sloan had no reasonable right to rely on Gaumer's opinions as assertions of fact. Therefore, because we conclude that Gaumer's statements to Sloan were clearly representations of opinion rather than fact and because we further find that Sloan had no reasonable right to rely on such statements as fact, we further conclude that the trial court properly granted summary judgment to Illinois Farmers upon the issues of actual and constructive fraud.

### *Negligent Misrepresentation*

▪ Trustee claims that the trial court erred in granting summary judgment to Illinois Farmers upon the issue of negligent misrepresentation. Despite Illinois Farmers assertions to the contrary, Trustee argues that Indiana does recognize the tort of negligent misrepresentation. In support of this contention, Trustee cites *Eby v. York–Division, Borg–Warner* (1983) Ind.App., 455 N.E.2d 623. In *Eby*, an employee sought damages from his employer for negligent misrepresentation after the employer falsely represented that there was a job for the employee in Florida, causing the employee and his wife to relocate from Indiana to Florida. Upon his arrival in Florida, the employee was told that there was no employment for him. The court therein concluded that, while negligent misrepresentation is a valid cause of action with respect to professionals, it may also be the basis for a valid tort claim with regard to non-professionals.[4] *Id.* at 629. The court determined that the employer had a duty to its employee, and found that the facts "could constitute a breach thereof in conformance

---

4. In doing so, the court noted that this state's hesitancy to permit recovery for negligent misrepresentation may emanate from the confusion which might be created in delineating between "professional opinion (malpractice) with simple misrepresentations made in the course of one's professional activities...." *Eby*, 455 N.E.2d at 629.

with the tort of negligent misrepresentation." *Id.* at 630.

Nevertheless, since *Eby,* we have stated that, despite the limited recognition of the tort in the context of an employer-employee relationship,[5] Indiana does not recognize the tort of negligent misrepresentation. *Short v. Haywood Printing Co., Inc.* (1996) Ind.App., 667 N.E.2d 209, 213, *trans. denied; Pugh's IGA, supra,* 531 N.E.2d at 1199 n. 1 (citing *Wilson v. Palmer* (1983) Ind.App., 452 N.E.2d 426; *Essex v. Ryan* (1983) Ind.App., 446 N.E.2d 368). In *Short,* we cited solely to *Wilson v. Palmer* (1983) Ind.App., 452 N.E.2d 426, 428. By not acknowledging the limited recognition of the tort contained in *Eby,* our categorical statement that "Indiana does not recognize the tort of negligent misrepresentation" may have been too broad. *Short, supra* at 213. In *Pugh's IGA, supra* at 1199 n. 1, the majority recognized the holding of *Eby* and stated that it was limited to its own facts. However, the court then inexplicably made the same categorical statement made in *Short,* citing not only *Wilson v. Palmer, supra,* but also *Essex, supra.* The *Eby* court, far from being unaware of *Wilson* and *Essex,* discussed the former cases extensively, apparently in recognition that application of the doctrine in a professional setting created an "entanglement of . . . discrete problems" but that such problems did not inhere in the employer-employee relationship involved in *Eby, supra,* 455 N.E.2d at 629. Therefore, notwithstanding the categorical pronouncements in

*Short* and in *Pugh's IGA,* Indiana *has* recognized the tort of negligent misrepresentation, albeit in a limited factual setting.

Be that as it may, without direction from our Supreme Court, we decline to extend the tort's application beyond the specific facts of *Eby.* Thus, we conclude that the trial court properly granted summary judgment to Illinois Farmers in regard to the claim of negligent misrepresentation.[6]

### Assumption of a Duty to Provide Correct Information

Finally, Trustee contends that the trial court erred in granting summary judgment for Illinois Farmers based upon what Trustee characterizes as Gaumer's breach of an assumed "duty to act as a reasonably prudent person and to provide accurate information." Appellant's Brief at 18. In response, Illinois Farmers argues that there is no such actionable claim in Indiana and that Trustee's claim is one for negligent misrepresentation merely cloaked under a different name. We agree with Illinois Farmers.

As demonstrated in *Eby,* relied upon by Trustee, in order to establish negligent misrepresentation, a plaintiff must establish that the person making the representations was under a duty not to misrepresent information. *Eby, supra,* 455 N.E.2d at 629. Thus, we can only assume that both the breach of a duty to provide accurate information and negligent misrepresentation would be established by a showing that a person, under a duty to supply

---

5. *See Tri-Professional Realty, Inc. v. Hillenburg* (1996) Ind.App., 669 N.E.2d 1064, 1068 (noting that "[t]he condition of Indiana law regarding the tort of negligent misrepresentation has been aptly described as one of 'relative chaos'," and that "[t]o date, we have not recognized that a duty exists to support the tort of negligent misrepresentation outside the limited context of an employment relationship.") (citing *Trytko v. Hubbell, Inc.* (1994) 7th Cir., 28 F.3d 715, *reh'g denied* ), *trans. denied.*

6. To the extent that the tort of negligent misrepresentation exists as a valid cause of action

in Indiana, it would not be applicable in this case. In order to establish the tort of negligent misrepresentation, a plaintiff must show that he has justifiably relied upon factual information. RESTATEMENT (SECOND) OF TORTS § 552, 126–27 (1977). A person cannot misrepresent his own opinion. In this case, we have concluded that Gaumer's statements clearly were not factual but were rather opinions and that Sloan could not have justifiably relied upon the statements. Thus, the tort of negligent misrepresentation would not be applicable to these facts.

accurate information, fails to exercise reasonable care in doing so and as a result the plaintiff, who justifiably relied on the information, was damaged. Presumably, whether that duty is inherent to the relationship or is assumed is of little consequence. *See, e.g., Cypress Oilfield Contractors, Inc. v. McGoldrick Oil Co., Inc.* (1988) La.Ct.App., 525 So.2d 1157 (finding valid a claim for negligent misrepresentation where defendant had assumed a duty), *writ. denied.* Although Trustee insists that his claim "cannot be reduced to a claim for negligent misrepresentation[,]" he has failed to provide us with a cognizable argument demonstrating any practical difference between the tort of negligent misrepresentation and the breach of an assumed duty to provide accurate information.[7] Appellant's Brief at 18. Because we have determined that the tort of negligent misrepresentation, to the extent that it exists, should not be expanded beyond the holding of *Eby, supra,* and because we find no practical difference between negligent misrepresentation and the breach of an assumed duty to provide accurate information, we conclude that Trustee has not fulfilled his burden of demonstrating that the trial court erred. The trial court properly granted summary judgment to Illinois Farmers on the claim for breach of an assumed duty to provide accurate information.[8]

The judgment is affirmed.

RILEY, J., concurs.

MATTINGLY, J., dissents with separate opinion.

MATTINGLY, Judge, dissenting

Had Illinois Farmers insured Sloan for only property damage to his vehicle, I could agree with the majority. However, Sloan had additional coverage with Illinois Farmers, including underinsured motorist and medical payment coverage. Because Gaumer's statement likely had the effect of relieving Illinois Farmers from any financial obligations toward Sloan under those coverages, I believe Gaumer may have had a duty not to misrepresent the information he provided to Sloan. As a result, genuine issues of material fact exist and I must respectfully dissent from the majority's decision affirming a summary judgment for Illinois Farmers.

Indiana's financial responsibility statute requires each driver to carry a minimum of $25,000 in coverage. Ind.Code § 9–25–2–3(1), (2). Pursuant to Ind.Code § 27–7–5–2, unless there was a waiver by Sloan, his underinsurance coverage would have to be at least $25,000.[9] Illinois Farmers

---

7. Trustee cites to *McDaniel, supra,* in support of the proposition that breach of an assumed duty to provide correct information is a tort distinct from negligent misrepresentation and is recognized in Indiana. Trustee is correct in stating that the court there concluded that the agent's "representations to [the plaintiff] regarding the need for, and the provision of, legal assistance is sufficient to create a factual question for the jury concerning assumption of duty." *McDaniel, supra* at 244. However, in *McDaniel,* the plaintiff was not pursuing damages based upon the breach of that duty as a separate action against the insurer. Rather, the discussion was in regard to invalidating a release agreement which the insurance company was using as an affirmative defense against the plaintiff's emotional distress claim.

Furthermore, the discussion of whether the insurance agent had assumed a duty to give full and accurate information concerning the release was in the context of constructive fraud and was focused upon whether the issue was one of law or of fact. It in no way may be read to recognize assumption of a duty by an insurance agent with respect to matters not related to the essence of the relationship between the parties. *See* Op. at 582–583, *supra.*

8. Again, even if we were to recognize the breach of an assumed duty to provide correct information as a distinct cause of action from negligent misrepresentation, we conclude that summary judgment still would have been appropriate on this issue because the statements made were opinion and did not purport to convey factual information to be tested for accuracy.

9. The Record does not reflect Sloan's actual policy limits.

would presumably not be obligated to pay Sloan any underinsurance benefits unless he first recovered from Weger the limits of Weger's Sagamore policy.

Sloan told Gaumer that he had been injured in the accident, suffering "whiplash and a burning sensation in [his] back, blurred vision." (R. at 30.) He also told Gaumer that he had been treated at a hospital emergency room after the accident. (Id.) Sloan did not tell Gaumer the amount of his medical expenses. (Id. at 34.) Yet, based on this limited information, Gaumer told Sloan that Sagamore's offer of $4,000 was fair.

When Sloan accepted Sagamore's offer of $4,000—an amount far below Weger's policy limits—he lost his right to underinsurance benefits available under the Illinois Farmers' policy. He also lost his right to recover any medical payment benefits, as by settling with Sagamore, he foreclosed Illinois Farmers' right of subrogation. As a result, Gaumer's representation to Sloan that $4,000 was a fair settlement amount likely resulted in a direct benefit to Illinois Farmers.

In determining whether a duty exists, we balance three factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Roe v. North Adams Community Sch. Corp.*, 647 N.E.2d 655, 659 (Ind.Ct.App. 1995). This test is applied to determine whether an insurer has a duty to its insured. *See Midwest Sec. Life Ins. Co. v. Stroup*, 706 N.E.2d 201, 206 (Ind.Ct.App. 1999) (addressing insurer's duty to deal with its insured in good faith).

In *Eby*, we recognized an action for negligent representation by an employer to an employee, though we did not ex-

pressly limit the availability of that cause of action to parties in such a relationship. We relied on the Restatement (Second) of Torts § 552, which recognizes an action for negligent misrepresentation when "[o]ne who, *in the course of his business*, profession, or employment, or in any other transaction *in which he has a pecuniary interest*, supplies false information for the guidance of others in their business transactions" (emphasis supplied) and when the other justifiably relies on the information and suffers pecuniary loss as a result of such reliance.

I believe the relationship between the insurer and the insured in the circumstances of the case before us is one which might give rise to a duty on the part of the insurer to provide accurate information. As explained above, Illinois Farmers likely had a pecuniary interest in providing false information which would encourage Sloan to accept the Sagamore settlement offer; Sloan's acceptance of the settlement may have relieved Illinois Farmers of substantial financial obligations it could otherwise incur by virtue of Sloan's underinsurance and medical payments coverage. As a result of his reliance on Gaumer's information, Sloan would suffer a pecuniary loss corresponding to Illinois Farmers' benefit.

Because the availability of the tort of negligent misrepresentation is not so restricted as the majority suggests, I believe there are genuine issues of material fact as to whether, when Gaumer made the representation to Sloan that Sagamore's offer was fair, Illinois Farmers had any potential underinsurance liability to Sloan.[10] More specifically, if both Sloan and Weger's policy limits were $25,000, then it is possible that Sloan could never recover underinsurance benefits from Illinois Farmers.[11] If, however, Weger's policy

---

10. An insurer has a duty to deal with its insured in good faith, and there is a cause of action for the tortious breach of that duty. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind.1993). The insurer's obligation of good faith and fair dealing includes an obligation to refrain from deceiving the insured. *Id.*

11. Typically, a person has to recover the per person policy limit, in this case $25,000, before being entitled to claim underinsurance benefits under his or her own policy. However, where, as in this case, there were more than two people involved in the accident, Sloan may not have had to recover the entire

limit was $25,000 and Sloan's underinsurance policy limit was higher than $25,000, then, provided that Sloan's injuries and damages were more than $25,000 and he obtained Weger's policy limits from Sagamore, Illinois Farmers could have been liable for underinsurance benefits.[12] Further, since we are not aware of the amount of Sloan's medical bills, Illinois Farmers could have been liable to Sloan for additional medical payment benefits. However, as a result of Sloan's reliance on Gaumer's representations, Illinois Farmers was relieved from any potential liability to Sloan for underinsurance benefits and further medical payments benefits.

I would reverse the summary judgment and remand for further proceedings.

$25,000 from Sagamore in order to be eligible for underinsurance benefits, as the total paid to all injured parties may have been the $50,000 occurrence policy limit.

12. The Record does not reflect the amount of Sloan's medical bills, the extent of his injuries, whether he received any additional medical treatment, or whether his injuries resulted in any permanent disability. The Record also does not reflect whether Sloan had other damages, such as lost income, as a result of injuries received in the automobile accident.